UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUESTTS

| | |
|---|---|
| F1 AIR, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KAIZEN AVIATION, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 05-11508-RCL |

**OPPOSITION OF PLAINTIFF F1 AIR, LLC
TO MOTION OF DEFENDANT KAIZEN AVIATION, INC.
TO REMOVE DEFAULT AND PERMIT TWENTY DAYS
IN WHICH TO ANSWER OR OTHERWISE RESPOND**

Plaintiff F1 Air, LLC ("Plaintiff" or "F1 Air") submits this opposition to the motion of defendant Kaizen Aviation, Inc. ("Defendant" or "Kaizen") to vacate the default entered against it.

## INTRODUCTION

Kaizen's motion should be denied because Kaizen has provided no basis for removing the default, which would result in the unnecessary litigation of a straightforward collection case in which Kaizen's liability to F1 Air is clear. If the Court determines to allow the motion, then it should condition its allowance on Kaizen posting a security bond sufficient to cover the damages recoverable by F1 Air, as Kaizen is in obvious financial difficulty and is attempting through the instant motion to further delay satisfaction of its long-overdue debt obligation to F1 Air.

## FACTUAL BACKGROUND

On February 25, 2005, Kaizen borrowed $159,210.41 from F1 Air in order to purchase and install a piece of equipment called an auxiliary power unit ("APU") needed to fly the plane used in the course of Kaizen's business.[1] The loan was memorialized in a Promissory Note calling for equal monthly installments of principal and interest in the amount of $9,415.75, with interest accruing at the rate of 8% annually. Under the terms of the Promissory Note, Kaizen's failure to make any single payment would constitute an event of default, the unpaid principal balance and any accrued interest would become due and payable immediately without demand or notice, and Kaizen would be responsible for F1 Air's collection costs, including reasonable attorneys' fees.

Kaizen, through its president, Harold A. Shafer ("Shafer"), made its first installment payment on or about May 20, 2005, proving that it has no valid defense except poverty. Since then, however, Kaizen has not made any of the required payments, all the while enjoying the possession and use of the APU that it purchased with F1 Air's loan proceeds and without which the plane could not fly.

## PROCEDURAL BACKGROUND

On July 15, 2005, F1 Air filed its Complaint against Kaizen, seeking to recover all amounts due and owing under the Promissory Note. F1 Air effectuated service of process on August 3, 2005, and the Court marked August 23, 2005 as the answer due date. On August 26, 2005, after Kaizen failed to serve and file a timely answer, F1 Air filed a request for entry of default. The clerk entered the requested default on September 12, 2005. On September 27, 2005, F1 Air moved for entry of a default judgment as to

---

[1] The loan proceeds also were used to cover the cost of a rental APU while Kaizen's APU was under repair.

Kaizen, and that motion remains pending. On September 30, 2005, Kaizen filed the instant motion to remove the default.

## ARGUMENT

### The Court Should Deny Kaizen's Motion Or, Alternatively, Condition The Removal Of The Default On Kaizen's Posting Of A Security Bond

Fed. R. Civ. P. 55(c) permits a Court to set aside the entry of a default for "good cause shown." Kaizen cannot satisfy this standard because its motion is based largely on an inaccurate account of the facts concerning the default and on a single conclusory allegation as to the presence of unspecified meritorious defenses, counterclaims, and possibly third-party claims.

Corporate records show that Kaizen has a principal place of business of 3517 Beaclerc Wood Lane West, Jacksonville, Florida 32257. (A true and correct excerpt from Kaizen's 2004 Annual Franchise Tax Report filed with the State of Delaware is attached hereto as <u>Exhibit A</u>.) This is the same address identified in the Promissory Note. Pursuant to M.G.L. c. 223, §§ 37 and 38, M.G.L. c. 223A, § 6, and Fed. R. Civ. P. 4, F1 Air served the Summons and Complaint on Shafer, as president of Kaizen, by certified mail, return receipt requested, at Kaizen's designated principal place of business. *See Media Duplication Services, Inc. v. HDG Software, Inc.*, 928 F.2d 1228, 1234 n.6 (1st Cir. 1991) (explaining that service on a foreign corporation is effective if sent by registered mail and addressed to the president, treasurer, clerk, or any member of the corporation) (citing *Kagan v. United Vacuum Appliance Corp.*, 357 Mass. 680, 685 (1970)).

One William P. Mauldin received the package and signed the return receipt to acknowledge same. However, despite Kaizen's own designation of 3517 Beaclerc Wood Lane West as its principal place of business, Kaizen now argues that "the complaint and

summons ... were not served upon Kaizen's principal, Harold Shafer," that service was "directed to Mr. Shafer's home" as opposed to his office, and that Mr. Mauldin was not authorized to accept service on behalf of Shafer or Kaizen, although "he works with Mr. Shafer in another distinct business unrelated to Kaizen." (Kaizen Mem. at 2, ¶¶ 3-4 .) Kaizen offers no explanation of why Mr. Mauldin did not alert Mr. Shafer to the pleadings delivered to Kaizen's designated principal place of business.

Kaizen also attempts to justify its default by asserting that "[a]t the time the complaint and summons allegedly were served, Mr. Shafer was traveling outside the contiguous United States" and did not learn of the Complaint or the motion to default "until after he returned from his travels on September 20, 2005." (Kaizen Mem. at 2, ¶¶ 5-8.) This is simply untrue. On September 13, 2005, Dawn Rappaport, who identified herself as a Florida-based counsel for Kaizen, left a voicemail for F1 Air's counsel, David Evans, on September 13, 2005 relative to the F1 Air's Complaint.[2] Mr. Evans returned the call that day and notified Ms. Rappaport of the default.

Kaizen "contends that it has viable, meritorious and complete defenses to the plaintiff's claims" as well as "viable and meritorious counterclaims and/or third-party claims, the damages for which are believed to exceed the alleged damages claimed by the plaintiff." (Kaizen Mem. at 3, ¶¶ 14-15.) Kaizen, though, has not identified a single such defense, counterclaim, or third-party claim or explained the factual or legal bases for its contention that such defenses, counterclaims, and third-party claims are "viable," "meritorious," and "complete." This is because no facts exist that would allow Kaizen to successfully defend this straightforward collection action on the merits. If there were any

---

[2] The voicemail has been retained and can be transcribed for the Court if this becomes a disputed point.

such facts, Kaizen surely would have identified them, and this Court cannot accept Kaizen's conclusory allegations without a proffer of substantiating facts. *See, e.g., Chandler Leasing Corp. v. UCC, Inc.*, 91 F.R.D. 81, 84 (N.D.. Ill. 1981) ("It is well settled that general denials and conclusory statements are insufficient to establish a meritorious defense; the movant must present a factual basis for its claims.") and cases cited therein. Indeed, if there were any defenses, why did Kaizen execute the Promissory Note and make a payment thereunder? The belatedly filed Affidavit of Harold Shafer is no more illuminating than Kaizen's memorandum.

These facts and circumstances demonstrate that Kaizen cannot satisfy the factors it identifies in its supporting memorandum as being necessary for setting aside a default. (Kaizer Mem. at 1, ¶ 1.) In particular, (1) the default was willful because Kaizen and its counsel had timely notice of the Complaint and the entry of default; (2) setting aside the default would prejudice F1 Air by requiring it to litigate the merits of a straightforward collection action for which there is no defense; (3) Kaizen has not identified a single meritorious defense, although it claims to have many; (4) Kaizen's explanation of the default is based on a meritless challenge to a permissible means of service of process at the designated principal place of business of Kaizen and on an inaccurate sequence of facts; (5) Kaizen's failure to identify a single defense, counterclaim, or third-party claim suggests a bad faith effort to temporize and require F1 Air to spend money to collect on the Promissory Note; (6) the amount of money involved—$187,585.72 as of September 23, 2005, with interest accruing at the rate of $33.47 per day and collectable attorneys' fees and costs being incurred as necessary to litigate this matter—is significant to F1 Air and will increase dramatically if Kaizen's motion is allowed; and (7) the timing of

Kaizen's motion, under the circumstances, reflects a want of reasonable diligence. *See McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 502 (1st Cir. 1996).

Based on the foregoing, Kaizen's motion appears to be a last-ditch effort to delay the issuance of an inevitable judgment against it and cannot fairly be characterized as a good faith effort to preserve and assert any meritorious claims or defenses. Accordingly, this Court should deny Kaizen's motion. If, however, this Court is inclined to allow Kaizen's motion, then the removal of the default should be conditioned upon Kaizen's posting of a security bond sufficient to cover the damages F1 Air will be entitled to recover on its claim.[3] *See Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514-16 (2$^{d}$ Cir. 2001) (holding that district court did not abuse its discretion when it required sellers to post bond as condition for vacating defaults and refused to lift that condition despite sellers' assertions of inability to post bond) and cases cited therein.

## CONCLUSION

For the reasons stated above, Kaizen has not demonstrated the "good cause shown" needed to vacate its default pursuant to Fed. R. Civ. P. 55(c). It is simply the desperate act of a financially troubled company. Accordingly, Kaizen's motion should be denied. If the Court allows Kaizen's motion, it should only do so on the condition that Kaizen post a security bond in the amount of at least $200,000 to cover part of the damages F1 Air will be entitled to recover on the underlying claim.

---

[3] F1 Air requests that the bond be in the amount of not less than $200,000. As noted, as of September 23, 2005, Kaizen owed F1 Air $187,585.72 under the Promissory Note, and interest and attorneys' fees continue to accrue. Thus, the $200,000 figure is conservative.

- 7 -

Respectfully submitted,

F1 Air, LLC

By its attorneys,

/s/ *signature*
David L. Evans (BBO # 156695)
Todd A. Newman (BBO # 629614)
Halye A. Sugarman (BBO # 646773)
HANIFY & KING
Professional Corporation
One Beacon Street
21st Floor
Boston, MA  02108
(617) 423-0400

Dated: October 11, 2005
438740

## CERTIFICATE OF SERVICE

I, David L. Evans, hereby certify that I have this 11th day of October 2005 served a copy of the foregoing Opposition by mailing a copy of same, postage prepaid to:

>Ralph T. Lepore, III
>Elizabeth M. Mitchell
>HOLLAND & KNIGHT LLP
>10 St. James Avenue
>Boston, MA 02116
>*Counsel for Kaizen Aviation, Inc.*

*/s/ David L. Evans*
David L. Evans

# EXHIBIT A

| NATURE OF BUSINESS | PRINCIPAL PLACE OF BUSINESS OUTSIDE OF DELAWARE |
|---|---|
| Charter Cape Ann | 3517 Beauclerc Wood Lane West, Jacksonville, FL 32257 |

| DIRECTORS | NAME | STREET/CITY/STATE/ZIP | DATE TERM EXPIRES |
|---|---|---|---|
| 1. | Harold A. Shafr | 3517 Beauclerc Wood Lane West, Jacksonville, FL 32257 | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

**DO NOT WRITE IN THIS SPACE - FOR BANK USE ONLY**

```
83    83443  44      $ 1900  12
GBT 04/04/05
```

| OFFICERS | NAME | STREET/CITY/STATE/ZIP | DATE TERM EXPIRES |
|---|---|---|---|
| 1. President | Harold A. Shafr | 3517 Beauclerc Wood Lane West, Jacksonville, FL 32257 | |
| 2. | | | |

ORIGINAL SIGNATURE (OFFICER, DIRECTOR OR INCORPORATOR)
X  Harold A. Shafr

TITLE: CEO

DATE: 3-28-05