UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| F1 AIR, LLC,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Civil Action No. 05-11508-RCL |
| ) | |
| KAIZEN AVIATION, INC.,  ) | |
| ) | |
| Defendant.  ) | |

### KAIZEN AVIATION, INC.'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The plaintiff, F1 Air, Inc. (the "Plaintiff"), has asserted a single cause of action against the defendant, Kaizen Aviation, Inc. ("Kaizen"), for breach of a promissory note. The Plaintiff's Complaint, however, suffers from a fatal flaw in that this Court does not have personal jurisdiction over Kaizen, a Delaware company having its principal place of business in Florida. Accordingly, this Court should dismiss Kaizen from this lawsuit pursuant to Mass. R. Civ. P. 12(b)(2).

### FACTUAL BACKGROUND

In its Complaint, the Plaintiff alleges that Kaizen obligated itself to pay to the Plaintiff, a Delaware limited liability company, a certain sum pursuant to the terms of a promissory note. *See* Complaint at ¶¶ 1, 6. The promissory note purportedly arose out of an arrangement between the parties whereby the Plaintiff assumed the cost of the installation of certain equipment, an auxiliary power unit ("APU"), in an aircraft owned by Kaizen ("N463LM"). *See* Affidavit of Harold Shafer ("Shafer Aff.") at ¶ 5, which is submitted herewith. The Plaintiff, who was in the

business of managing aircraft, had sought to manage aircraft beyond those it owned and engaged in discussions with Kaizen about managing N463LM. *See id.* at ¶ 6. These discussions occurred at least in part in Maryland and New Jersey. *See* Shafer Aff. at ¶ 7. None, however, occurred where Kaizen was present in Massachusetts. *See id.* at ¶ 8. In fact, most of them involved long distance communications between Kaizen in Florida and one of the Plaintiff's members, or its agent, located in New Jersey. *See id.* at ¶ 9. As part of the arrangement between Kaizen and the Plaintiff, N463LM was relocated to Dallas, Texas and managed by CNK, Inc. d/b/a F1 Air ("F1 Air Dallas"). *See id.* at ¶ 10. The APU was installed in N463LM while it was in Texas. *See id.* at ¶ 11. The cost for this equipment was to be deducted from amounts owed Kaizen by F1 Air Dallas under the aircraft management agreement. *See* Promissory Note, a copy of which is appended to the Complaint; Shaffer Aff. at ¶ 12. The aircraft, however, was mismanaged and Kaizen was informed that the revenues it generated were not sufficient to cover the monthly payments due under the promissory note. *See* Shafer Aff. at ¶ 13. Some time after the installation of the APU, the Plaintiff forwarded the promissory note to Kaizen and requested that Kaizen execute it. *See id.* at ¶ 14. Kaizen did not participate in either the drafting of the promissory note or in determining the terms included therein. *See id.* at ¶ 15. After much urging by the Plaintiff, on or about May 20, 2005, Kaizen executed the promissory note in its offices in Jacksonville, Florida and returned it to the Plaintiff as requested by the Plaintiff. *See id.* at ¶ 16.

Kaizen is organized under the laws of the Delaware and has a principal place of business in Florida. *See id.* at ¶¶ 2-3. Kaizen does not maintain an office, employees, bank accounts, telephone listing, or mailing address in Massachusetts. *See id.* at ¶¶ 17-21. Kaizen does not own, rent or use any property in Massachusetts. *See id.* at ¶ 22. Kaizen is not licensed or authorized to conduct business in Massachusetts. *See id.* at ¶ 23. It does not have an agent for service of process in Massachusetts. *See id.* at ¶ 24. Kaizen does not pay taxes in Massachusetts. *See id.* at ¶ 25. Kaizen does not advertise for or solicit business in Massachusetts, nor does Kaizen ship or deliver products to Massachusetts. *See id.* at ¶¶ 26-27. Likewise, Kaizen does not directly provide services to persons or entities located in Massachusetts. *See id.* at ¶ 28.

## ARGUMENT

### I. The Plaintiff Bears the Burden of Establishing Jurisdiction Over Kaizen.

In bringing an action, a plaintiff must demonstrate that jurisdiction over a defendant exits. *See Champion Exposition Services, Inc. v. Hi-Tech Elec., LLC*, 273 F. Supp.2d 172, 174 (D. Mass. 2003). This requires a plaintiff to go "'beyond the pleadings and make affirmative proof.'" *Id.*, *quoting Jana Brands, Inc. v. NexiFM, Inc.*, 2003 WL 164251, at * 1 (D. Mass. Jan. 23, 2003). Here, the Plaintiff has not, and cannot, make the requisite showing.

## II.    Massachusetts And Federal Law Prohibit The Exercise Of Personal Jurisdiction Over Kaizen In This Case.

A federal court presiding over a case in which subject matter jurisdiction is based on diversity of citizenship of the parties must apply the law of the forum state to determine whether personal jurisdiction is appropriate. *See Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002). Massachusetts has a two-tier test to determine whether personal jurisdiction may be asserted over a defendant. First, a plaintiff must demonstrate that the Massachusetts long-arm statute, M.G.L. ch. 223A, authorizes the exercise of jurisdiction based upon the defendant's conduct within Massachusetts. *See Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 3 (1979). Second, the plaintiff must prove that exerting personal jurisdiction over the defendant would not violate the due process requirements of the United States Constitution. *See Foster-Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir. 1995); *see also Connecticut Nat'l Bank v. Hoover Treated Wood Prod., Inc.,* 37 Mass. App. Ct. 231, 233 (1994).

In evaluating a plaintiff's proofs, the Court "accept[s] as true the uncontroverted facts that appear in the materials presented to the . . . Court." *Connecticut Nat'l Bank*, 37 Mass. App. Ct. at 233. This standard includes consideration of supporting affidavits submitted by the defendant. *See Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 292 (1985).

In the present case, the Plaintiff is unable to satisfy either tier of the jurisdictional test. Specifically, the Plaintiff has failed to set forth a sufficient

factual predicate in its Complaint to establish that Kaizen transacted business in the Commonwealth. Therefore, the Plaintiff cannot meet the requirements of the long-arm statute. Moreover, the Plaintiff has failed to set forth sufficient facts regarding Kaizen's "minimum contacts" with Massachusetts to satisfy the standard required under the Constitution. For these reasons, the Court should dismiss the Plaintiff's Complaint against Kaizen.

### A. The Massachusetts Long-Arm Statute Does Not Authorize The Exercise Of Personal Jurisdiction Over Kaizen.

The Massachusetts long-arm statute provides eight different means through which a court may exercise personal jurisdiction over an out-of-state defendant. *See* Mass. Gen. Law ch. 223A § 3. As a preliminary matter, subsections (b) through (d) are not applicable because the Plaintiff does not contend that Kaizen contracted to provide goods or services in the Commonwealth or that Kaizen committed a tort. *See generally* Complaint. Similarly, subsections (e) through (h) of the statute are inapplicable to the present case because the case does not involve domiciles, marital relations or child support orders. *See id.* Accordingly, for the purposes of this case, the only applicable prong of the long-arm statute is subsection (a), which provides in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a)     transacting any business in this commonwealth[.]

*See id.*

1.    **The Plaintiff Cannot Establish A Basis For Jurisdiction Over Kaizen Pursuant To M.G.L. ch. 223A § 3(a).**

Chapter 223A § 3(a) gives rise to jurisdiction over a defendant if the defendant transacted business in Massachusetts and if the alleged harm arose from such transaction of business. *See Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 153 (1978). In determining whether a defendant has transacted business within Massachusetts, courts have considered the nature and number of any direct contacts the defendant may have had with Massachusetts, as well as the location of the defendant's principal place of business, whether it maintains an office, telephone listing, mailing address, or employees in Massachusetts, whether it has advertised for or solicited business in Massachusetts, whether it owns, rents or uses property in Massachusetts, or whether it has supplied goods or services in Massachusetts or billed for the same. *See Good Hope Indus., Inc.*, 378 Mass. at 8-10; *Droukas*, 375 Mass. at 153; *Fame Computers Ltd. v. Creative Systems Interface, Inc.*, Civ. No. 93-6371, 1994 WL 879809, at *2 (Mass. Super. March 18, 1994), a copy of which is appended hereto at Exhibit 1. Courts also have considered whether the defendant ever paid taxes in Massachusetts, maintained bank accounts in Massachusetts, had authority to conduct business as a foreign corporation in Massachusetts or had an agent for service of process in Massachusetts. *See TX Media, Inc. v. Spice Entertainment Co., Inc.*, Civ. No. 98-0465B, 1998 WL 1181686, at * 2 (Mass. Super. Nov. 12, 1998), a copy of which is appended hereto at Exhibit 2.

Moreover, the inquiry requires examination of the quality, as well as the quantity of a nonresident's contacts with Massachusetts. *See Aub v. Technicolor*

*Entertainment Serv.*, 224 F. Supp.2d 371, 373 (D. Mass. 2002).  "The First Circuit has noted that the 'transacting [any] business test under section 3(a) is designed to identify deliberate, as distinguished from fortuitous contacts with the forum by the nonresident party.'"  *Id., quoting Lyle Richards Int'l Ltd. v. Ashworth, Inc.*, 132 F. 3d 111, 112 (1st Cir. 1997).  Significantly, the long-arm statute does not confer jurisdiction where a nonresident's contacts with the Commonwealth were "purely incidental" to business transactions.  *See id.*  Likewise, the Supreme Judicial Court has distinguished cases involving a nonresident's contacts that are "random or isolated events" from cases where the contacts are "part of a larger systematic effort on [the nonresident's] part to obtain business from Massachusetts businesses and residents."  *Id., quoting Tatro v. Manor Care, Inc.*, 416 Mass 763 (1994).

As such, whether jurisdiction is proper pursuant to ch. 223A § 3(a) turns on the specific facts of each case.  *Compare Aub*, 224 F. Supp.2d at 373 (finding defendant did not transact business in Massachusetts where nonresident company engaged in long distance communications with Massachusetts plaintiff and forwarded payments for services rendered by plaintiff to Massachusetts) *and Droukas*, 375 Mass. at 153 (finding no jurisdiction where Florida defendant advertised in a magazine distributed in Massachusetts for sale of marine engines, received telephone call from plaintiff in Massachusetts concerning these engines, sent correspondence to plaintiff in Massachusetts confirming the sale of the marine engines to plaintiff and arranged for delivery of engines "collect" to plaintiff in Massachusetts) *and "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.*,

361 Mass. 441, 445 (1972) (holding purchase of a single item from Massachusetts company accompanied by partial payment insufficient to confer long-arm jurisdiction where it had little impact on Massachusetts commerce) *and Nichols Assocs. v. Starr*, 4 Mass. App. Ct. 91, 96-97 (1976) (determining that jurisdiction over Connecticut resident lacking where defendant's only two contacts with Massachusetts were performance of a portion of work by plaintiff in Massachusetts and defendant's dispatch of an employee to Massachusetts to pick up plans required for the Connecticut project) *with Good Hope Indus., Inc.*, 378 Mass. at 6 (finding that the defendant transacted business in Massachusetts where it dealt closely with a Massachusetts company on a complex and complicated transaction over the course of 17 months, and where it placed over 50 calls and sent monthly reports and invoices to Massachusetts over more than a year); *see also Stanton v. AM General Corp.*, 50 Mass. App. Ct. 116, 119-20 (2000) (holding that defendant's single purchase in Massachusetts was an isolated transaction insufficient to constitute doing business for the purposes of satisfying the jurisdictional requirements of the long-arm statute); *Telco Communications, Inc. v. New Jersey State Firemen's Mut. Benevolent Assoc.*, 41 Mass. App. Ct. 225, 229 (1996) (finding no jurisdiction over a foreign corporation having no office or agent or other presence in Massachusetts where agreement at issue was the only contractual relationship between the defendant and plaintiff, which had a principal place of business in Massachusetts).

Similarly, where a nonresident simply purchases goods or services from Massachusetts residents, Massachusetts courts are less inclined to find the

nonresident subject to personal jurisdiction in the Commonwealth. *See Aub*, 224 F. Supp.2d at 373-74. Indeed, the Supreme Judicial Court has noted that ch. 223A, § 3(a) "should not be interpreted to confer jurisdiction over all purchasers of Massachusetts products and services because such a broad application could produce 'the unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts.'" *Id., quoting Good Hope Indus.*, 378 Mass. at 9. In contrast, a nonresident who seeks out purchasers in Massachusetts and actively advertises its goods or services to Massachusetts residents is more likely to be found to have engaged in the type of deliberate contacts with Massachusetts that qualify as the transaction of business under the long-arm statute. *See id.*

In its Complaint, the Plaintiff fails to allege any facts providing a basis for personal jurisdiction pursuant to § 3(a) over Kaizen. Significantly, the Plaintiff makes no mention of any conduct by Kaizen occurring in Massachusetts. *See generally* Complaint. Rather, the Plaintiff simply alleges that one of its members is located in Massachusetts and that Kaizen directed a single payment to the Plaintiff in Massachusetts. *See* Complaint at ¶¶ 2, 11. The Plaintiff does not allege, nor could it, that the parties negotiated the promissory note in Massachusetts. Indeed, the Plaintiffs forwarded the promissory note to Kaizen's office in Florida without any input from Kaizen. *See* Shafer Aff. at ¶ 15. At the Plaintiff's repeated urging, Kaizen executed the promissory note while in Florida and returned it to the Plaintiff as requested by the Plaintiff. *See id.* at ¶ 16.

Similarly, the Plaintiff does not allege that it had any contact with Kaizen concerning the subject matter of the promissory note, installation of the APU, in Massachusetts. In fact, the APU was installed in the aircraft in Dallas, Texas. *See id.* at ¶ 11. Significantly, the Plaintiff makes no allegation that, but for the single partial payment Kaizen directed to Massachusetts, that Kaizen has any contacts with the Commonwealth whatsoever. This payment and any contacts the Plaintiff may later seek to identify are purely incidental to the promissory note. Kaizen's involvement with the Plaintiff had nothing to do with the fact that one of its members is located in Massachusetts and it was of no consequence to Kaizen that the Plaintiff may have operated, at least in part, out of Massachusetts. The fact that there may have been long-distance communications between Kaizen in Florida and one of the Plaintiff's members in Massachusetts simply is not enough to justify the conclusion that Kaizen transacted business in Massachusetts. *See e.g. Aub*, 224 F. Supp.2d at 374. This is especially true where Kaizen did not actively seek out the Plaintiff in Massachusetts or to promote itself within the Commonwealth. *See id.; see also Lyle Richards,* 132 F.3d at 113-14 (no personal jurisdiction over out-of-state defendant where Massachusetts plaintiff initially solicited defendant's involvement in the transaction); *LaForest v. Ameriquest Mortg. Co.,* 383 F. Supp.2d 278, 282-83 (D.Mass. 2005) (California based employee of mortgagee did not transact business in Massachusetts by directing phone calls, letters and faxes to the Commonwealth, when activities were in response to request by mortgagor); *New Hampshire Ins. Guar. Ass'n v. Markem Corp.,* 424 Mass. 344, 348-49 (1997)

(nonresident defendant did not transact business by mailing insurance payments to Massachusetts, since Massachusetts-based insurer-plaintiff solicited insurance business in New Hampshire).

Moreover, it is undisputed that Kaizen maintains no office, telephone listing, mailing address or bank account in Massachusetts, does not own, rent or use any property in Massachusetts, is not qualified or authorized to conduct business in Massachusetts, solicits no business in Massachusetts, does not advertise in Massachusetts, does not employ any individuals in Massachusetts, does not ship or deliver any products to Massachusetts, does not have an agent for service of process in Massachusetts, and does not pay taxes in Massachusetts. *See* Shafer Aff. at ¶¶ 17-28. Based upon the foregoing undisputed facts, it is clear that Kaizen does not "transact business" within the Commonwealth, as contemplated by ch. 223A § 3(a).

**B.    Jurisdiction Over Kaizen Is Not Appropriate Because The Requirements Of Due Process Guaranteed Under The United States Constitution Have Not Been Satisfied.**

In addition to satisfying the Massachusetts long-arm statute, which the Plaintiff has failed to do, the Plaintiff also must demonstrate that this Court's exercise of personal jurisdiction over Kaizen is consistent with the basic requirements of due process mandated by the United States Constitution. *See Litchfield Financial Corp. v. Buyers Source Real Estate Group,* 389 F. Supp.2d 80, 84 (D. Mass. 2005). The First Circuit has identified "three distinct components" to this inquiry: "relatedness, purposeful availment (sometimes called 'minimum contacts') and reasonableness." *Foster-Miller*, 46 F.3d at 144. To prevail, the

Plaintiff must demonstrate that all three components are satisfied.  *See*

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st cir. 1994).

### 1.    The Plaintiff Cannot Make The Required Showing of Relatedness.

The relatedness component, which requires a finding "that a suit arise out of,

or be related to" the nonresidents forum activities, "ensures that the element of

causation remains in the forefront."  *Id.* at 206, 207.  In contract cases, a court

"must look to the elements of the cause of action and ask whether the defendant's

contacts with the forum were instrumental either in the formation of the contract or

its breach."  *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st

Cir. 1999).  The mere existence of a contractual relationship is not sufficient to meet

this test.  *See id.*  "Rather, prior negotiations and contemplated future

consequences, along with the terms of the contract and the parties' actual course of

dealing . . . must be evaluated in determining whether the defendant purposefully

established minimum contacts with the forum."  *Id., quoting Burger King Corp. v.*

*Rudzewicz,* 471 U.S. 462, 479 (1985).  Here, as described above, Kaizen has had few,

if any, contacts with Massachusetts.  Indeed, all of the parties' face to face dealings

occurred outside of Massachusetts and there is no evidence to suggest that any

incidental contacts Kaizen may have had with Massachusetts were instrumental in

the formation or alleged breach of the promissory note.

### 2.    The Plaintiff Cannot Make The Required Showing of Purposeful Availment.

The purposeful availment component is designed to assure that personal

jurisdiction is not premised solely upon the nonresident's "random, isolated, or

fortuitous" contacts with Massachusetts. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Sawtelle v. Farrel*, 70 F. 3d 1381, 1391 (1st Cir. 1995). As such, the Plaintiff must demonstrate that Kaizen's contacts "represent a purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of its laws and making the defendant's involuntary presence before [a Massachusetts] court foreseeable. *See Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994).

Here, Kaizen has not purposefully availed itself of the laws and protections of Massachusetts. *See Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 933-35 (1st Cir. 1985) (where the mailing of four letters to and receiving at least one telephone call from the plaintiff in Massachusetts satisfied the transacting business requirement of the section 3(a), such contacts were insufficient to demonstrate purposeful availment); *Phillips Exeter Acad.*, 196 F.3d at 292 ("without evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship—say, by solicitation—the mere fact that the defendant willingly entered into a tendered relationship does not carry the day");[1] *Litchfield Financial Corp.*, 389 F. Supp.2d at 88-91 (while mailing of three letters into the Commonwealth satisfied section 3(a) of the long-arm statute, such conduct failed to satisfy the requirements of due process).

Moreover, as set forth above, Kaizen does not transact or conduct business in Massachusetts, nor is it licensed or authorized to do so. *See* Shafer Aff. at ¶¶ 23, 28.

---

[1] The Plaintiff is not a Massachusetts entity. *See* Complaint at ¶ 2. Rather, only one of the Delaware limited liability company's members maintains a place of business in Massachusetts. *See id.*

Kaizen also does not advertise for or solicit business in Massachusetts. *See id.* at ¶ 26. Nor does it maintain an office, employees, bank accounts, telephone listing, or mailing address in Massachusetts. *See id.* at ¶¶ 17-21. Kaizen does not own, lease, or use real property in Massachusetts. *See id.* at ¶ 22. Kaizen also does not ship or deliver products or provide services to individuals or entities in Massachusetts. *See id.* at ¶ 27. Kaizen does not have an agent for service of process in Massachusetts and it does not pay taxes in Massachusetts. *See id.* at ¶¶ 24-25.

Further, Kaizen did not enter into any agreements with the Plaintiff in Massachusetts. *See generally* Complaint. Rather, as explained above, the Plaintiff, a Delaware limited liability company, having a single member in Massachusetts, sent to Kaizen in Florida the promissory note presumably prepared by the Plaintiff. *See* Shafer Aff. at ¶¶ 14-15. Kaizen executed the note in Florida, returning it to the Plaintiff as requested. *See id.* at ¶ 16. The promissory note itself does not obligate Kaizen to perform any acts in or deliver any goods or services to the Plaintiff in Massachusetts. The only connection to Massachusetts is the presence of one of the Plaintiff's members in the Commonwealth and its request that Kaizen direct payments to it in Massachusetts. Sending payment to a plaintiff in Massachusetts without more, however, does not create a valid basis for personal jurisdiction. *See Aub,* 224 F. Supp.2d at 373-74.[2]

---

[2] While the promissory note contains a choice of law provision specifying that it shall be construed in accordance with the laws of Massachusetts, such a provision by itself is insufficient to confer jurisdiction. *See Marine Charter & Storage Ltd., Inc. v. Denison Marine, Inc.,* 701 F. Supp. 930, 934 (D. Mass. 1988).

Given these undisputed facts, the Plaintiff cannot demonstrate that Kaizen purposefully established any contacts with Massachusetts. In fact, any contacts Kaizen had with Massachusetts were entirely fortuitous. Massachusetts courts have determined that defendants having contacts with Massachusetts greater than those Kaizen has in this case did not satisfy the Constitutional requirements because they did not purposefully avail themselves of the privilege of conducting activities within Massachusetts. *See e.g., Droukas*, 375 Mass. at 154 (finding where defendant's only contacts with Massachusetts were: (1) the placement of an advertisement in a publication distributed in Massachusetts regarding the sale of two marine engines; (2) the receipt of a telephone call from plaintiff, who was in Massachusetts, concerning the sale of the two engines; (3) the sending of correspondence to plaintiff in Massachusetts confirming the sale of these engines; and (4) the shipment of the engines "collect" to plaintiff in Massachusetts, the defendant's transaction was isolated in nature with slight effect on the commerce of the Commonwealth and void of any purposeful intent on the part of the defendant to avail itself of the privilege of conducting activities within the forum state); *"Automatic" Sprinkler Corp. of America*, 361 Mass. at 446 (holding where defendant's only contacts with Massachusetts were: (1) the mailing of a purchase order and a check in partial payment to plaintiff in Worcester; and (2) the receipt of a letter and invoice mailed from Worcester, defendant's activity had little impact on commerce in Massachusetts and therefore, defendant did not "purposefully (avail) itself of the privilege of conducting activities within the forum State"). Where

Kaizen's contacts with Massachusetts are far less than those of the defendants in *Droukas* and "*Automatic*" *Sprinkler*, it would be unreasonable to require Kaizen to defend this action in Massachusetts and a violation of due process for this Court to exercise jurisdiction over Kaizen.

### 3.    The Plaintiff Cannot Make The Required Showing of Reasonableness.

The "reasonableness" component requires that the assertion of jurisdiction over a nonresident must "not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *see also Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).  In analyzing this component, a court typically must weigh five elements often referred to as "gestalt factors," which are "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Foster-Miller*, 46 F.3d at 150.

In the instant case, these factors can be addressed in short order.  First, it is without question that it would be burdensome for Kaizen, which has no connection to Massachusetts, to litigate here.  Second, any interest Massachusetts has in adjudicating this matter is marginal; it involves two Delaware entitles, virtually all, if not all events giving rise to the promissory note occurred outside of Massachusetts and only witnesses from one of the Plaintiff's members may live

here.  The same holds true for the third factor.  While one of the Plaintiff members is in Massachusetts, it is a Delaware entity having another member in New Jersey.  As such, even the Plaintiff's connection to Massachusetts is tenuous.  As to the fourth and fifth factors, it does not appear that the case involves any "substantive social policies," let alone ones that necessarily should be resolved in Massachusetts.  Consequently, the gestalt factors favor dismissal of Kaizen.

**CONCLUSION**

For the reasons discussed above, Kaizen Aviation, Inc. respectfully requests that this Court grant its motion to dismiss the Plaintiff's Complaint against it for lack of personal jurisdiction.

Respectfully submitted,

**KAIZEN AVIATION, INC.**

By its attorneys,

*Elizabeth Mitchell*

Ralph T. Lepore, III (BBO# 294420)
Elizabeth M. Mitchell (BBO# 638146)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue
Boston, Massachusetts 02116
Telephone: (617) 523-2700

Dated:  November 17, 2005

# 3387566_v1

*I hereby certify under the penalties of perjury that this document was served upon counsel for all parties in this case on ~~by Hand~~ / by Mail*

11/17/05

Westlaw.

Not Reported in N.E.2d
Not Reported in N.E.2d, 1994 WL 879809 (Mass.Super.)
**(Cite as: 1994 WL 879809 (Mass.Super.))**

Page 1

Only the Westlaw citation is currently available.

Superior Court of Massachusetts.
FAME COMPUTERS LIMITED
v.
CREATIVE SYSTEMS INTERFACE INC., Micro
Focus Limited, and Micro Focus
Incorporated.
**No. 936371.**

March 18, 1994.

MEMORANDUM OF DECISION AND ORDER
ON DEFENDANTS' MICRO FOCUS LIMITED
AND MICRO
FOCUS INCORPORATED MOTION TO DISMISS
PURSUANT TO MASS.R.CIV.P. 12(b)

HOUSTON, Judge.

*1 The defendants, Micro Focus Limited ("Micro Focus Ltd.") and Micro Focus Incorporated ("Micro Focus Inc."), move to dismiss this action pursuant to Mass.R.Civ.P. 12(b)(2) and 12(b)(5) on the grounds of lack of personal jurisdiction and insufficiency of service of process. For the reasons set forth below, defendants' motion is ALLOWED pursuant to Mass.R.Civ.P. 12(b)(2).

BACKGROUND

The facts set forth in plaintiff's complaint and defendants' affidavit are essentially as follows.

In July 1991, Fame Computers Limited ("Fame") [FN1] and Creative Systems Interface, Inc. ("CSII") [FN2] entered into negotiations whereby Fame was to acquire a license from CSII for a product known as Application-Application-Interface ("AAI"). While negotiations were pending, Fame loaned CSII $60,000. The negotiations were never completed. Fame then sued CSII to collect the $60,000 in Middlesex Superior Court, Civil Action No. 93-0427. Fame requested that CSII hold the source code of AAI in escrow as security for repayment of the loan; CSII did not comply. Plaintiff alleges in its complaint that CSII instead transferred its intellectual rights in AAI to Micro Focus Ltd. [FN3] and Micro Focus Inc. [FN4] on or about May 13, 1993.

FN1. Fame is an English corporation.

FN2. CSII is a Massachusetts Corporation.

FN3. Micro Focus Ltd. is an English company.

FN4. Micro Focus Incorporated is a California corporation.

According to the defendants, CSII did not transfer its intellectual property rights in the AAI product to Micro Focus Inc. or Micro Focus Ltd. Instead, defendants state that CSII entered into an agreement concerning its AAI product with System Focus International CV ("SFI"). *See Affidavit of Robert A. Connors* at paragraph 5. SFI is a Netherlands limited partnership and is an indirect wholly-owned entity of Micro Focus Group plc, an English company. See Affidavit of Robert A. Connors at paragraph 5. Micro Focus Inc. and Micro Focus Ltd. are also indirect wholly-owned subsidiaries of Micro Focus Group plc. *See Affidavit of Robert A. Connors* at paragraphs 2 and 3. Defendants also contend that neither Micro Focus Inc. nor Micro Focus Ltd. were signatories to the agreement between CSII and SFI. *See Affidavit of Robert A. Connors* at paragraph 6.

DISCUSSION

Plaintiff bears the burden of establishing a factual basis for this court's exercise of personal jurisdiction over the defendant. *Good Hope Industries, Inc. v. Ryder Scott Co.,* 378 Mass. 1, 2-3 (1979); *Rye v. Atlas Hotels, Inc.,* 30 Mass.App.Ct. 904, 905 (1991). The exercise of jurisdiction must comport with both the Massachusetts long-arm statute, G.L.c. 223A, and the requirements of due process under the United States Constitution. *Good Hope Industries, Inc., supra* at 5-6; *Bond Leather Co., Inc. v. O.T. Shoe Mfg. Co., Inc.,* 764 F.2d 928, 931 (1st Cir.1985).

The Massachusetts long-arm statute provides in pertinent part that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a *cause of action ... arising from the person's* (a) transacting business in this commonwealth ...; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of

conduct, or devices substantial revenue from goods used or consumed or services rendered, in this commonwealth ..." (italics added); G.L. c. 223A, § 3(a) and § 3(d).

**\*2** To come within subsection (a) of § 3, plaintiff must show that the defendants, for statutory and constitutional purposes, transacted business in Massachusetts, and that plaintiff's injury arose out of such transaction. *Rye, supra* at 905. Subsection (a) has been construed broadly, and may be satisfied "where the only contact involved is an isolated transaction, or one with little impact on the commerce of [Massachusetts]." *Hahn v. Vermont Law School,* 698 F.2d 48, 50 (1st Cir.1983); *Bond Leather Co., supra* at 932. "Although such isolated contracts with Massachusetts may be constitutionally insufficient to support jurisdiction, this activity may be viewed literally as having 'transacted business' in Massachusetts." *Whistler Corp. v. Solar Electronic, Inc.,* 684 F.Supp. 1126, 1130 (D.Mass.1988).

Under subsection (d), plaintiff must demonstrate that the defendants caused tortious injury to the plaintiff in Massachusetts, and that the defendants regularly do or solicit business, or derive substantial revenue from services used or consumed in Massachusetts. See *Whistler Corp., supra* at 1130-31 (D.Mass.1988).

In the instant case, Fame has offered no evidence supporting a finding that Micro Focus Ltd. falls within the statutory provision of § 3(a). Micro Focus Ltd. is an English corporation who is not registered to do business in Massachusetts; has never conducted business in Massachusetts; does not own any property in Massachusetts; and does not maintain offices, bank accounts or employees in Massachusetts. *Affidavit of Robert A. Connors* at p. 2, paragraph 3. See *Whistler Corp., supra* at 1130.

Similarly, plaintiff has not alleged any facts to support that it has suffered a "tortious injury" in Massachusetts resulting from Micro Focus Ltd.'s actions. Additionally, nothing in the record supports that Micro Focus Ltd. "regularly does or solicits business, or engages in any other persistent course of conduct, or devices substantial revenue from goods used or consumed or services rendered, in this Commonwealth" pursuant to § 3(d). *Whistler Corp., supra* at 1130-31. Thus, there is no basis, pursuant to either § § 3(a) or (d), for personal jurisdiction over Micro Focus Ltd.

Plaintiff has likewise failed to establish that this court has jurisdiction over the defendant Micro Focus

Inc. Although Micro Focus Inc. admits to doing business in the United States, including Massachusetts, plaintiff has not shown that it was injured from any transaction by Micro Focus, Inc. in Massachusetts. *Rye, supra* at 905. The agreement concerning the AAI product was between SFI and CSII, not Micro Focus Inc. As such, there is no jurisdiction pursuant to G.L. c. 223A, § 3(a).

Since the plaintiff has not demonstrated that Micro Focus Inc. caused an injury in this Commonwealth, this court likewise does not have jurisdiction over Micro Focus Inc. pursuant to G.L. c. 223A, § 3(d). Under subsection 3(d), plaintiff must demonstrate that Micro Focus Inc. caused a "tortious injury" in this commonwealth. As stated previously, the agreement concerning the AAI product was between SFI and CSII. SFI is a Netherlands limited partnership and an indirect wholly-owned entity of Micro Focus Group plc, an English company. *See Affidavit of Robert A. Connors* at paragraph 5. SFI is not owned by Micro Focus Inc., the California corporation. This court therefore does not have jurisdiction pursuant to G.L. c. 223A, § 3(d).

ORDER

**\*3** For the foregoing reasons, it is hereby ORDERED that the defendants' motion to dismiss is ALLOWED.

Not Reported in N.E.2d, 1994 WL 879809 (Mass.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Westlaw.

Not Reported in N.E.2d                                                                                    Page 1
Not Reported in N.E.2d, 1998 WL 1181686 (Mass.Super.)
**(Cite as: 1998 WL 1181686 (Mass.Super.))**

Only the Westlaw citation is currently available.

Superior Court of Massachusetts.
TX MEDIA, INC.,
v.
SPICE ENTERTAINMENT COMPANIES, INC.
[FN1]

FN1. Fka Graff Pay-Per-View, Inc.

**No. 980465B.**

Nov. 12, 1998.

MEMORANDUM OF DECISION AND ORDER
ON DEFENDANT'S MOTION TO DISMISS

FECTEAU.

*1 Plaintiff, TX Media, Inc. ("TXM"), brought this action seeking damages for breach of contract and breach of the implied covenant of good faith and fair dealing allegedly committed by defendant, Spice Entertainment Companies, Inc., fka Graff Pay-Per-View, Inc. ("Graff"). Graff now moves to dismiss the instant action for lack of personal jurisdiction or, in the alternative, for forum non conveniens. For the reasons set forth below, Graff's motion to dismiss is *allowed*.

### BACKGROUND

Graff is a foreign corporation (incorporated under the laws of Delaware) with its primary place of business in New York, New York. Graff provides pay-per-view programming to cable television companies and satellite dish owners throughout the United States, including Massachusetts. Graff's signal is first transmitted on the ground via a fiber optic path from its "Playback Center" in New York to an "Earth Station" in New Jersey. The signal is then uplinked to a satellite in outer space, from which the signal is downlinked by cable television operators or satellite dish owners located in the satellite's "geographic footprint" which includes the United States.

On November 10, 1995, TXM, a Delaware corporation with its primary place of business, at all relevant times, in Westborough, Massachusetts, [FN2] and Graff entered into an "Interconnection and

Consultancy" agreement ("TXM/Graff Agreement"), wherein TXM agreed to provide interconnection services to Graff for the ground transmission of Graff's signal via a fiber optic path from Graff's "Playback Center," located in New York City, to an "Earth Station," owned by ICG Wireless Services, Inc. ("ICG") and located in Carteret, New Jersey ("ground link").

FN2. TXM notes, in its opposition to Graff's motion, that its primary place of business is now Marlborough, Massachusetts.

The TXM/Graff Agreement also acknowledged TXM's brokerage services, which included brokering a service agreement between Graff and ICG ("ICG Agreement"). Pursuant to the ICG Agreement, ICG contracted to uplink Graff's signal to a satellite in outer space ("uplink"). Numerous cable television companies and satellite dish owners entered into separate agreements with Graff to downlink Graff's signal from the satellite ("downlink").

The parties negotiated the TXM/Graff Agreement in New York in person or on the telephone, both at Graff's New York City office and at a New York City condominium owned by Scott Beers ("Beers"), the president and managing partner of TXM. No telephone negotiations occurred between New York and Massachusetts. Beers sent to Graff a letter, dated May 10, 1995, which set forth the essential terms of their agreement and listed TXM's Massachusetts address as the return address. The TXM/Graff Agreement was later signed at Graff's offices in New York. [FN3]

FN3. Graff claims, and TXM does not dispute, that almost all business dealings, including the negotiations, between Graff and TXM regarding the TXM/Graff Agreement occurred out of a New York City condominium owned by Beers, the president and managing partner of TXM, or out of the New Jersey home of Howard N. Miller ("Miller"), one of the four shareholders of TXM.

In the TXM/Graff Agreement, TXM and Graff agreed to relieve each other of their obligations if a force majeure occurred, including a third party's failure to perform. Graff and IBM (its North

Not Reported in N.E.2d
Not Reported in N.E.2d, 1998 WL 1181686 (Mass.Super.)
(Cite as: 1998 WL 1181686 (Mass.Super.))

Tarrytown, New York branch office) had an agreement ("IBM Agreement"), wherein IBM agreed to provide Graff with video file servers, key components to Graff's "Playback Center," by a certain date. Both TXM and Graff agreed that the TXM/Graff Agreement was contingent on IBM furnishing such servers. When IBM failed to provide those servers within the specified time, [FN4] Graff, by letter dated December 28, 1995, terminated the TXM/Graff Agreement. [FN5]

> FN4. IBM, the White Plains, New York office, settled Graff's breach of contract claim against it.

> FN5. Graff also terminated the ICG agreement and the IBM agreement.

DISCUSSION

I. Personal Jurisdiction

**\*2** In order for this Court to assert personal jurisdiction over Graff, (1) the Massachusetts long-arm statute, G.L. c. 223A, § 3, must be satisfied; and, (2) the due process requirements of the United States Constitution must be fulfilled. _Good Hope Indus., Inc., v. Ryder Scott Co.,_ 378 Mass. 1, 5-6, 389 N.E.2d 76 (1979). The plaintiff, TXM, has the burden of proving personal jurisdiction. _Droukas v. Divers Training Academy, Inc.,_ 375 Mass. 149, 151, 376 N.E.2d 548 (1978). The Court "accept[s] as true the uncontroverted facts that appear in the materials presented to the Superior Court." _Conn. Nat'l Bank v. Hoover Treated Wood Products, Inc.,_ 37 Mass.App.Ct. 231, 233, 638 N.E.2d 942 (1994) (citations omitted).

a. Long-Arm Statute

TXM argues that the Court has personal jurisdiction over Graff as TXM's cause of action arises from Graff's "transacting ... business" in Massachusetts. [FN6] G.L. c. 223A, § 3(a). [FN7] In order to determine that Graff was "transacting ... business" in Massachusetts, TXM must show that Graff engaged in "any purposeful acts ... in Massachusetts, whether personal, private, or commercial." _Johnson v. Witkowski,_ 30 Mass.App.Ct. 697, 713, 573 N.E.2d 513 (1991), _rev. denied_ 411 Mass. 1104, 581 N.E.2d 481. Although isolated and minor transactions with a Massachusetts resident may be insufficient, "the purposeful and successful solicitation of business from [Massachusetts] residents" by a foreign defendant is sufficient. _Tatro v. Manor Care, Inc.,_ 416 Mass. 763, 767, 625 N.E.2d 549 (1994).

> FN6. Although Graff argues that the Court does not have general jurisdiction, this Court need not address that issue as it is TXM's burden to establish personal jurisdiction, _Droukas v. Divers Training Academy, Inc._ 375 Mass. 149, 151, 376 N.E.2d 548 (1989), and it has failed to raise the issue of general jurisdiction. Additionally, TXM specifically states that general jurisdiction is not at issue here in its opposition papers. See Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, p. 14 n. 12. Even assuming that Graff's contacts with Massachusetts were sufficient enough to constitute "continuous and systematic" activity, see _Helcopteros Nacionales de Columbia, S.A. v. Hall,_ 466 U.S. 408, 413-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), _United Elec. Workers v. 163 Pleasant Street Corp.,_ 960 F.2d 1080, 1088 (1st Cir.1992) (stating that "[g]eneral jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum State"), and _Tatro v. Manor Care, Inc.,_ 416 Mass. 763, 772 n. 6, 625 N.E.2d 549 (1994), this Court has dismissed the instant action based on forum non conveniens. See discussion, _infra._

> FN7. G.L. c. 223A, § 3(a) provides that "[a] court may exercise personal jurisdiction over a person ... as to a cause of action in law or equity arising from the person's ... transacting any business in this commonwealth."

It is undisputed that Graff has never been a domiciliary or resident corporation of Massachusetts; has never owned a subsidiary in Massachusetts; has never controlled any corporations in Massachusetts; has never maintained an office in Massachusetts; has never paid taxes in Massachusetts; has never maintained any bank accounts in Massachusetts; has no authority to conduct business as a foreign corporation in Massachusetts; and has no agent for service of process in Massachusetts. Moreover, the TXM/Graff Agreement was signed in New York, was negotiated in New York and New Jersey, and was to be performed in New York and New Jersey, and outer space (if the TXM/Graff Agreement is considered inextricably intertwined with the ICG

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                           Page 3
Not Reported in N.E.2d, 1998 WL 1181686 (Mass.Super.)
**(Cite as: 1998 WL 1181686 (Mass.Super.))**

Agreement). IBM's failure to provide the servers for Graff's New York "Playback Center" and Graff's subsequent breach of the subject contract and the implied covenant of good faith and fair dealing occurred in New York.

On the other hand, according to the record, Graff sent five pieces of correspondence, including the December 28, 1995 termination letter, [FN8] to TXM in Westborough, Massachusetts. [FN9] Graff also had much contact with Massachusetts cable operators and vendors amounting to revenues over $2 million since November 1995 and over $1.5 million since January 1997. Those contacts demonstrate that Graff purposely directed its business activities at Massachusetts and actively sought contracts with Massachusetts cable operators and vendors, as well as satellite dish owners, thus establishing that Graff was "transacting ... business," in Massachusetts.

> FN8. It is noteworthy, however, that one of those five letters was regarding a deal which was unrelated to the instant dispute, three of the other four letters were dated after Graff terminated the contract, and the fifth letter was the termination letter, dated December 28, 1995.

> FN9. TXM, in its opposition papers, recites a long list of its contacts with Massachusetts and includes, as exhibits, copies of letters and invoices to document its presence in Massachusetts. There is no argument that TXM has a presence in Massachusetts. It is the defendant, Graff, however, over which TXM seeks to have this Court assert jurisdiction; and, therefore, it is Graff's presence or transaction of business in Massachusetts with which this Court is concerned.

*3 However, TXM's causes of action against Graff did not arise from those contracts. Massachusetts has adopted a "but for" test in interpreting the "arising from" language found in G.L. c. 223A, § 3. *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 771, 625 N.E.2d 549 (1994). "(A) claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." *Id.* It cannot be said that but for Graff's contracts with Massachusetts cable companies and vendors, IBM's failure to deliver the necessary servers and the subsequent alleged breach of the contract and breach of the implied covenant of good faith and fair dealing

by Graff would not have occurred. Graff had contracts with cable television operators and satellite dish owners all over the nation, not just in Massachusetts. Thus, even without the Massachusetts contracts, Graff would have required its signal to be transferred from New York to New Jersey and then up to the satellite, IBM would have failed to deliver the servers, and Graff would have breached the TXM/Graff Agreement and the implied covenant of good faith and fair dealing. [FN10] Therefore, TXM has failed to establish that its claims arise from Graff's "transacting ... business" in Massachusetts and, thus, that Graff is subject to in personam jurisdiction in Massachusetts under c. 223A, § 3(a). Since there is no personal jurisdiction over Graff under the long-arm statute, the Court need not address the second element of an assertion of personal jurisdiction, to wit, whether personal jurisdiction is constitutionally permissible under due process principles. See *Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 6, 389 N.E.2d 76 (1979) (holding that "(a)lthough presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites" set forth in G.L. c. 223A, § 3).

> FN10. TXM's claims arise from the TXM/Graff Agreement which is limited to TXM providing a ground link for Graff's signal from New York to New Jersey. Even assuming that the TXM/Graff Agreement could not be separated from the ICG Agreement, which TXM brokered and which was acknowledged in the TXM/Graff Agreement, TXM could only show that its breach of contract and breach of the implied covenant of good faith and fair dealing claims arise from the ground link and uplink. In no way was TXM involved in the downlink to the various states, including Massachusetts. See *Bueno v. La Compania Peruana de Radiodifusion,* 375 A.2d 6 (D.C.Ct.App.1977) (distinguishing between uplinks and downlinks and holding that, although the downlink, which was the plaintiff's responsibility under the contract, reached the forum state, the court could not assert personal jurisdiction over the defendant whose only contacts with the forum state were the events giving rise to the instant dispute and whose sole responsibility under the contract was the uplink, which did not involve the forum state).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d, 1998 WL 1181686 (Mass.Super.)
**(Cite as: 1998 WL 1181686 (Mass.Super.))**

II. Forum Non Conveniens

Assuming, *arguendo,* that TXM established personal jurisdiction over Graff, the present case should still be dismissed based on forum non conveniens under G.L. c. 223A, § 5. [FN11] Forum non conveniens works to "decline jurisdiction which is constitutionally permissible when another state is better situated to deal with the matter." *Green v. Manhattanville College,* 40 Mass.App.Ct. 76, 78, 661 N.E.2d 123 (1996), *rev. denied* 422 Mass. 1107, 664 N.E.2d 1197, quoting *Carlson Corp. v. Univ. of Vt.,* 380 Mass. 102, 109 n. 10, 402 N.E.2d 483 (1980). A "plaintiff's choice of forum should rarely be disturbed," *New Amsterdam Cas. Co. v. Estes,* 353 Mass. 90, 95, 228 N.E.2d 440 (1967), quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 50, 508-09 (1947), "unless the balance of both private and public concerns strongly favors the defendant's motion." *Green,* 40 Mass.App.Ct. at 79, 661 N.E.2d 123. "The decision to refuse to hear a case on the ground of forum non conveniens is left to the discretion of the trial judge." *Kearsarge Metallurgical Corp. v. Peerless Ins. Co.,* 383 Mass. 162, 168, 418 N.E.2d 580 (1981).

> FN11. G.L. c. 223A, § 5 provides that "[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just."

**\*4** Three private factors should be considered in determining whether to dismiss an action based on forum non conveniens: (1) ease of access to proof; (2) availability of compulsory process; and (3) cost of attendance of witnesses. *Green,* 40 Mass.App.Ct. at 80, 661 N.E.2d 123. Those factors strongly favor a trial in New York. All of the potential witnesses, including Beers (TXM's signer and main negotiator of the subject contract) and the officers and employees of Graff, IBM, and ICG, are, or are likely to be, located in New York (and possibly New Jersey). [FN12] Additionally, the pertinent records which will likely be evidence at a trial of this matter are located in New York or New Jersey with the exception of plaintiff's records. Furthermore, the parties in the TXM/Graff Agreement specifically contracted for New York law to apply to any dispute over the contract. New York has a very strong interest in enforcing its own laws. See *Green,* 40 Mass.App.Ct. at 80, 661 N.E.2d 123. For those reasons, this case should be dismissed on the ground

of forum non conveniens.

> FN12. At the time of the transaction and subsequent breach, TXM's president and managing partner, Beers, was a resident of Massachusetts. However, although he maintains a home in Massachusetts, Beers is now a resident of New York. Beers' residency in New York further supports dismissing this case in favor of New York asserting jurisdiction as Beers was the primary person who negotiated the subject contract and who signed the contract. Moreover, Graff alleges, and TXM does not dispute, that three of the four sole shareholders of TXM, including Beers, now work from homes or offices maintained in New York or New Jersey.

ORDER

It is hereby ORDERED that Graff's Motion to Dismiss is ALLOWED.

Not Reported in N.E.2d, 1998 WL 1181686 (Mass.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.