UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| F1 AIR, LLC, )<br><br>       Plaintiff, )<br><br>v. )<br><br>KAIZEN AVIATION, INC., )<br><br>       Defendant. ) | Civil Action No. 05 11508 RCL |

**PLAINTIFF F1 AIR, LLC'S OPPOSITION TO DEFENDANT KAIZEN'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff F1 Air, LLC ("F1 Air") hereby opposes defendant Kaizen Aviation, Inc.'s

("Kaizen") motion to dismiss for lack of personal jurisdiction ("Motion to Dismiss").

**PRELIMINARY STATEMENT**

Kaizen's Motion to Dismiss should be denied because Kaizen waived its objection to

personal jurisdiction by not raising it in either of the two motions it previously filed with this

Court.  Moreover, Kaizen should be judicially estopped from arguing that this Court lacks

personal jurisdiction because in its Motion to Remove Default and Permit Twenty Days in

Which to Answer or Otherwise Respond ("Motion To Remove Default") and in its Opposition of

Kaizen Aviation, Inc. to Motion for Judgment by Default ("Opposition to Default Judgment")

(and in its supporting Affidavit of Harold Shafer, Kaizen's principal, dated October 11, 2005),

Kaizen urged the Court to vacate the default because it had "viable, meritorious and complete

defenses" as well as "counterclaims and/or third party claims."  Kaizen has not advanced any of

these "defenses" or "claims" in its Motion to Dismiss.  Instead, Kaizen has filed a purely

procedural motion as a delay tactic – a continuance of its scheme to avoid payment of an

undisputed debt obligation to F1 Air. In the event that the Court finds that Kaizen has not

waived its objection to personal jurisdiction, its contacts with Massachusetts are sufficient to

meet both state and federal constitutional jurisdiction standards. Kaizen is simply out of money

and is using a jurisdictional motion to frustrate F1 Air's entitlement to a judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Kaizen, a Delaware corporation with its principal place of business in Florida, engaged

F1 Air, a Delaware limited liability corporation with its principal place of business in Braintree,

Massachusetts, to manage the leasing of Kaizen's Gulfstream III aircraft (Reg. No. N463LM).

At some point, the Auxiliary Power Unit ("APU") on Kaizen's aircraft broke down, but Kaizen

lacked the funds to have it repaired. In order to keep the plane in the air and generating income,

F1 Air agreed to loan Kaizen the money to rent a temporary APU and to have the plane's APU

rebuilt. F1 Air paid for the APU by wire transfer from its bank account located in

Massachusetts. *See* Wire Transfer Receipt, a copy of which is attached hereto as Exhibit A.

Kaizen memorialized its obligation to F1 Air in a promissory note (the "Note"), a copy of which

is attached as Exhibit A to the Complaint. F1 Air negotiated terms of the Note from its offices in

Massachusetts. F1 Air sent the Note from its offices in Massachusetts to Kaizen, and Harold

Shafer, on behalf of Kaizen, signed the Note as of February 25, 2005 and returned it to F1 Air's

offices in Massachusetts. The Note is governed by the laws of Massachusetts.

Kaizen made one payment under the Note by sending a check to F1 Air's Massachusetts

offices on or about May 20, 2005, but failed to make any of the other scheduled payments. F1

Air continued to negotiate in good faith for the payment of the debt from its offices in

Massachusetts, but those attempts were unsuccessful. Eventually, F1Air accelerated the balance

due in accordance with the terms of the Note and demanded payment in full, plus interest and

costs of collection. Receiving no response, on July 15, 2005, F1 Air filed a complaint against

Kaizen to recover all amounts due under the Note. Service was effectuated by certified mail on

August 3, 2005. Kaizen's answer was due on August 23, 2005. Not surprisingly, Kaizen failed

to respond to the Complaint. On August 26, 2005, F1 Air filed a request for an entry of default,

and the Court entered a default against Kaizen on September 12, 2005.

On September 27, 2005, F1 Air moved for the entry of a default judgment pursuant to

Fed. R. Civ. P. 55(b). On September 30, 2005, Kaizen filed a Motion to Remove Default

alleging, *inter alia,* improper service of process. *See* Defendant's Memorandum in Support of

Motion to Remove Default at ¶¶ 2-5 ("The complaint and summons … were not served upon

Kaizen's principal, Harold Shafer, nor was the receipt signed by an officer, managing or general

agent, or any other agent authorized by appointment or law to receive service of process on

behalf of Kaizen. Rather, the papers, which were directed to Mr. Shafer's home, were accepted

by and the receipt signed by William Maudlin. Mr. Maudlin is neither an agent nor an employee

of Kaizen…."). Kaizen also represented that it had "viable, meritorious and complete defenses

to the plaintiff's claims and "viable and meritorious counterclaims and/or third party claims, the

damages for which are believed to exceed the alleged damages demand by the plaintiff." *Id.* at

¶¶ 14, 15. Additionally, on October 11, 2005, Kaizen filed an Opposition to Default Judgment.

Once again, Kaizen requested relief because, "significantly," Kaizen had "viable, meritorious

and complete defenses to plaintiff's claims, as well as viable and meritorious counterclaims

and/or third party claims…." Opposition to Default Judgment at ¶ 8 (citing Affidavit of Harold

Shafer). Kaizen also repeated its suggestion that service of process was improper. *Id.* at ¶ 2; *see*

*also* Affidavit of Harold Shafer at ¶¶ 2, 3. Kaizen has never disputed that it continues to use the

APU subsidized by F1 Air, that it signed the note voluntarily and that it has not paid the amounts due thereunder.

By a minute order on October 28, 2005, this Court granted Kaizen's Motion to Remove Default. Although its two motions created the impression that it would answer the complaint and assert supposedly "viable, meritorious and complete defenses" and "viable meritorious defenses and counterclaims and/or third party claims," Kaizen filed a Motion to Dismiss based solely on personal jurisdiction grounds.

## ARGUMENT

### I.    Kaizen Has Waived Its Defense of Lack of Personal Jurisdiction

Kaizen waived its defense that this Court lacks personal jurisdiction because Kaizen failed to preserve this argument in either its Motion to Remove Default or in its Opposition to Default Judgment. Moreover, by alleging improper service of process, and not including the defense of personal jurisdiction, Kaizen has waived its right to contest personal jurisdiction pursuant to Fed. R. Civ. P. 12(h)(1).

A.    Kaizen Waived its Objection to Personal Jurisdiction by Failing to Raise the Defense in Its Motion to Remove Default or in its Opposition to Default Judgment.

Kaizen's failure to assert the defense of lack of personal jurisdiction in its first motion, requesting removal of the default, prevents Kaizen from raising it now. *See American Ass'n. of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106-07 (9th Cir. 2000); *In re Bridge Express, Inc.*, 114 F. App'x 937, 938 (9th Cir. 2004) ("we do not consider [defendant's] contention regarding personal jurisdiction because he waived any objections to the bankruptcy court's jurisdiction by failing to raise the issue in his Rule 60(b) motions to set aside the default judgments."). A party's right to dispute personal jurisdiction is waived if it is not asserted in a

party's initial pleading, even if the pleading is merely directed to a default. *See In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1299-1300 (11th Cir. 2003). "[*I*]*n personam* jurisdictional challenges to default judgments are forfeited if not asserted in a Rule 60(b) motion, if such a motion is made." *Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir.), *cert. denied sub nom, Gurley v. Swaim,* 517 U.S. 1244 (1996). The fact that Kaizen moved to set aside the default under Fed. R. Civ. P. 55 (and not Rule 60) does not change the result. *See Hayhurst*, 227 F.3d at 1106-07 (personal jurisdiction defense is waived if not asserted in a Rule 55(c) motion); *United States v. 51 Pieces of Real Property*, Powell, New Mexico 17 F.3d 1306 (10th Cir. 1994) (same). As the Court in *Swaim* explained, "when a party chooses to utilize the attention and limited resources of a district court in a motion under Rule 60(b), we think it is just and proper that it be required to put before the district court whatever infirmities support setting aside the default judgment…" 73 F.3d at 719.

Here, Kaizen's Motion to Remove Default constituted a general appearance before this Court. Kaizen neglected to contest personal jurisdiction in this motion, but instead argued that service was improper and that it had viable and complete (although, of course, unspecified) defenses, counterclaims and third-party claims. *See* Memorandum in Support of Motion to Remove Default at ¶¶ 3-5, 14-15. Kaizen made these same arguments in its Opposition to Default Judgment, but again neglected to preserve its defense of personal jurisdiction. Because Kaizen did not object to personal jurisdiction in its Motion to Remove Default or in its Opposition to Default Judgment, it is now precluded from doing so.

B.      Alternatively, Kaizen Waived Personal Jurisdiction By Failing to Include All Rule 12 Defenses In Its Motions.

Kaizen also waived any defense to personal jurisdiction by arguing other Fed. R. Civ. P. 12 defenses in its earlier motions. Specifically, in both of Kaizen's previously filed motions, it

raised improper service (at Mr. Shafer's home, and accepted by someone allegedly unaffiliated and unauthorized by Kaizen) as a basis for removal of the default. Motion to Remove Default at ¶¶ 3-5; Opposition to Default Judgment at ¶ 2. Fed. R. Civ. P. 12(h)(1) provides, in relevant part: "A defense or lack of jurisdiction over the person…is waived … if omitted from a motion in the circumstances described in subdivision (g), or … if it is neither made by motion under this rule nor included in a responsive pleading…." Rule 12(g), in turn, provides: "If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall <u>not</u> thereafter make a motion based on the defense, or objection so omitted…." Fed. R. Civ. P. 12(g) (emphasis added).

Several Circuit Courts of Appeals have held that a motion to set aside a default is a defensive move that triggers the provisions of Fed. R. Civ. P. 12(h)(1). *See 51 Pieces of Real Property, Roswell, New Mexico*, 17 F.3d at 1314; *see also, Hayhurst*, 227 F.3d at 1106-07 (affirming denial of motion to vacate default under Fed. R. Civ. P. 55(c) and motion to dismiss for lack of personal jurisdiction because the defense of lack of jurisdiction was not raised in Rule 55(c) motion); *O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394, 1398-99 (7th Cir. 1993) (affirming district court's decision that the defendant "waived any challenge to personal jurisdiction by failing to raise the issue in its initial motion to vacate").

In *51 Pieces of Real Property*, the government moved for a default judgment. While the motion for a default judgment was pending, counsel for defendant entered an appearance and filed a motion for an extension of time and a response to the government's motion for a default. 17 F.3d at 1308, 1314. Thereafter, the defendant filed a motion to dismiss based on lack of personal jurisdiction. The court ruled that defendant's response to the government's motion for a default constituted a defensive move that triggered the provisions of Fed. R. Civ. P. 12(h)(1). *Id.*

at 1314. Consequently, the defendant was required to include an objection to personal jurisdiction in its response to that motion. By failing to do so, the court held that the defense was waived.

In *R.J. O'Brien*, the plaintiff moved for a default, and at the default hearing, the defendant argued that it had been improperly served. 998 F.2d at 1397. Because plaintiff could not locate the proof of service during the hearing, the request for a default was denied. *Id.* Two days later, plaintiff filed another motion for default, together with the summons and proof of service. At a subsequent default hearing, the court entered a default. Defendant filed a motion to vacate under Fed. R. Civ. P. 55(c), and plaintiff filed a motion for a default judgment. The Court entered a default judgment against the defendant in the amount of $40,000.

Defendant thereafter filed a motion requesting dismissal of the case for lack of personal jurisdiction and reconsideration of its motion to vacate, both of which the trial court denied. On appeal, defendant argued that the judgment was void because the district court lacked personal jurisdiction. The Court of Appeals disagreed, holding that defendant had waived any challenge to personal jurisdiction by not asserting it in his initial motion to vacate pursuant to Rule 55(c) because it "was, in essence, a Rule 12 motion." *Id.* at 1399.

Similarly, in *Hayhurst*, the Ninth Circuit denied defendant's motion to dismiss for lack of personal jurisdiction because it had previously filed a motion to remove a default under Rule 55(c), in which it had also alleged insufficiency of service of process. 227 F.3d at 1106-07. Because it raised insufficiency of service of process in its motion to remove the default, the court viewed the motion as a Rule 12 motion. It, therefore, denied the motion to dismiss on personal jurisdiction grounds because defendant had failed to raise all Rule 12 defenses in its first motion. 227 F.3d at 1107.

Kaizen did not raise personal jurisdiction in its papers filed in connection with the default, relying instead on assertions of improper service on some stranger at Mr. Shafer's home and viable and complete defenses and claims. Fed. R. Civ. P. 12(h)(1) forbids it from contesting jurisdiction now.

## II. Even if Kaizen Had Not Waived its Defense of Personal Jurisdiction, it is Judicially Estopped From Raising it Now

Kaizen should be judicially estopped from objecting to personal jurisdiction because of its assertions in its Motion to Remove Default and in its Opposition to Default Judgment. The representations in the motions, and in Mr. Shafer's Affidavit, that it had viable, meritorious and complete defenses to F1 Air's claims and viable and meritorious counterclaims and/or third party claims were intended to mislead the Court and demonstrate the equity of vacating a properly entered default.[1] "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Wang Labs., Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 358 (Fed. Cir. 1992) (following First Circuit law) (quoting *Davis v. Wakelee*, 156 U.S. 680 (1895)). The doctrine applies when a litigant has asserted inconsistent positions on the same legal point in separate proceedings or in successive stages of the same litigation. *Fay v. Fed. Nat'l Mortgage Ass'n.*, 419 Mass. 782, n.10 (1995); *see Cadle Co. v. Schlictmann, Conway, Crowley & Hugo*, 338 F.3d 19, 22-3 (1st Cir. 2003) ("We generally will not permit litigants to assert contradictory positions at different stages of a lawsuit in order to advance their interest."). Court's employ judicial estoppel when a litigant is "playing fast and loose with the courts" and "when intentional self-contradiction is being used as a means of obtaining unfair advantage in a

---

[1]    In its opposition to the Motion to Remove Default, F1 Air argued in the alternative that Kaizen should be required to post a bond as a condition to removal of the default. This alternative request was denied without opinion.

forum provided for suitors seeking justice." *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987).

This case is ripe for judicial estoppel. In its papers seeking to remove the default, Kaizen claimed that it had "viable, meritorious and complete defenses" to the plaintiff's claims and "viable and meritorious counterclaims and/or third party claims." Memorandum in Support of Motion to Remove Default at ¶¶ 14, 15; *see also* Opposition to Default Judgment at ¶ 8. The court agreed to remove the default, but contrary to its representations, Kaizen has not raised any complete "defenses" or any "claims." Rather, Kaizen filed a procedural motion designed to temporize while it renders itself judgment proof.

Judicial estoppel is not defined with reference to inflexible criteria for determining its applicability. *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). Nevertheless, Massachusetts district courts have looked at three factors when determining whether judicial estoppel applies. First, the Court must determine that the party "against whom judicial estoppel is being asserted 'made a bargain' with the tribunal of the first proceeding by making certain representations to the tribunal in order to obtain a particular 'benefit' from the tribunal." *United States v. Owens*, 933 F.Supp. 76, 82 (D. Mass. 1996).

This is exactly what happened here. In order to get the default removed, Kaizen represented that it had (and, presumably, wished to advance) "viable, meritorious and complete defenses" and "viable and meritorious third party claims and/or counterclaims." Without these representations, it is likely that the Court would not have vacated the default. A default judgment in F1 Air's favor would have followed. This Court's removal of the default was an obvious benefit to Kaizen.

9

Second, the inconsistent statement must have been adopted in some manner by the court. *See id.* Here, the Court apparently accepted Kaizen's statements that it had "complete defenses," and removed the default without even a bond to protect F1 Air's interests.

Finally, there must be an indication of "deliberate dishonesty" or "serious prejudice to the judicial proceedings or the position of the opposing party." *Id.* (quoting *Desjardins v. Van Buren Community Hospital*, 37 F.3d 21, 23 (1st Cir. 1994)). Kaizen highlighted (albeit obliquely) the existence of "complete defenses" and "claims" in two different motions and in an affidavit sworn to by its principal. Yet, after the default was removed, Kaizen did not raise these "defenses" or "claims," because they simply do not exist. It was simply a device to enhance its prospects of securing the removal of the default. Indeed, if there were any such defenses or claims, why did Kaizen sign a Note acknowledging its obligation to F1 Air and make a payment thereunder? Kaizen's representations were deliberate and, we submit, calculated to mislead the Court and F1 Air as to its intentions.

## III. The Court Has Personal Jurisdiction Over Kaizen

In reviewing a motion to dismiss for lack of personal jurisdiction, "this Court must construe the facts in the light most hospitable to the plaintiff[]." *Clark v. City of St. Augustine, Fla.*, 977 F. Supp. 541, 542 (D. Mass. 1997). The Court

> employs the *prima facie* standard, under which the Court considers whether the plaintiffs have proffered evidence that, 'if credited, is enough to support findings of all facts essential to personal jurisdiction.' When determining whether a *prima facie* showing has been made, this Court does not act as a factfinder, but instead 'accepts properly supported proffers of evidence by a plaintiff as true.'

*Brookfield Mach., Inc. v. Calbrit Design*, 929 F. Supp. 491, 494 (D. Mass. 1996) (citations omitted).

In determining whether to exercise jurisdiction over a non-resident defendant, the First Circuit, like Massachusetts state courts, requires compliance with both statutory and federal constitutional jurisdictional standards. Where, as here, there are "sufficient contacts between the defendant and the forum to satisfy both the state's long-arm statute and the Fourteenth Amendment's Due Process clause," exercise of jurisdiction is appropriate. *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995) (citations omitted); *Good Hope Indus., Inc., v. Ryder Scott Co.*, 378 Mass. 1, 6 (1979) ("G.L. c. 223A, functions as 'an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'").

**A.**     The Massachusetts Long-Arm Statute Supports the Exercise of Jurisdiction Over Kaizen.

Under the Massachusetts long-arm statute, "[a] court may exercise personal jurisdiction over a person…as to a cause of action in law or equity arising from the person's…transacting any business in this commonwealth[]" G.L. c. 223A, § 3(a). The "transacting any business" clause has been interpreted broadly. *See United Elec., Radio and Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992) ("Both federal and state courts have regularly construed the 'transacting any business' language of the statute in a generous manner."); *Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*, 56 F. Supp. 2d 134, 138 (D. Mass. 1999) (same). "For jurisdiction to exist under § 3(a), the facts must satisfy two requirements -- the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994). Here, both requirements are easily satisfied.

1.    Defendant Kaizen Transacted Business in Massachusetts.

Kaizen transacted business in Massachusetts within the meaning of G.L. c. 223, § 3(a). Physical presence is not required to meet this standard. *JMTR Enterprises, LLC v. Duchin*, 42 F.

Supp. 2d 87, 96 (D. Mass. 1999) ("section 3(a) does not require that the business be transacted

within the physical bounds of Massachusetts") (citations omitted); *Phillips Exeter Academy v.

Howard Phillips Fund, Inc.,* 196 F.3d 284, 290 (1st Cir. 1999) ("[T]o be constitutionally

significant, forum-state contacts need not involve physical presence."). Indeed, "[m]odern

technology has taken us far beyond the point where two men must stand in each other's physical

presence to transact business. Widespread use of the telephone and the mails make actual

physical presence unnecessary in many cases." *Good Hope Indus., Inc.,* 378 Mass. at 11

(citation omitted); *Tatro,* 416 Mass. at 768.

   A defendant may be considered to have transacted business in Massachusetts where "the

only contact involved is an isolated transaction, or one with little impact on the commerce of

[Massachusetts]." *Hahn v. Vermont Law School,* 698 F.2d 48, 50 (1st Cir. 1983) (sending

application information and an offer of admission into Massachusetts satisfied the "transacting

any business" requirement). *See also, Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142

F.3d 26, 36 (1st Cir 1998) ("[t]he transmission of facts or information into Massachusetts via

telephone or mail would of course constitute evidence of a jurisdictional contact directed into the

forum state"); *L & P Converters, Inc. v. H.M.S. Direct Mail Serv., Inc.,* 634 F. Supp. 365, 366

(D. Mass. 1986) ("do[ing] nothing to participate in the Massachusetts economy beyond placing

the phone orders from New York" satisfied the "transacting any business" requirement). In

general, purposeful and successful solicitation of business from a resident of Massachusetts is

sufficient. *Tatro*, 416 Mass. at 767.

   Additionally, choice of law provisions are another basis for a court to assert personal

jurisdiction over non-resident defendants. *Better Boating Ass'n v. BMG Chart Prods., Inc.,* 1998

WL 408976, *3 (Mass. Super. Ct. July 10, 1998), attached hereto as Exhibit B.

Kaizen argues that this Court lacks personal jurisdiction over it because it did not conduct business in Massachusetts. This argument has no merit. In his Affidavit, Harold Shafer acknowledged that "most of his communications between the two [parties] involved long distance communications." Affidavit of Shafer at ¶9 (emphasis added). Kaizen voluntarily solicited and entered into a business relationship with a company based in Braintree, Massachusetts. F1 Air paid for the repair of the APU and Kaizen agreed to repay F1 Air pursuant to a Note, governed by Massachusetts law. Additionally, Kaizen acknowledged its responsibility to repay F1 Air by sending one payment under the Note to F1 Air's offices in Massachusetts. *See Bond Leather Co. v. QT Shoe Mfg. Co.*, 764 F.2d 928, 932-33 (1st Cir. 1985) (executing a guaranty in favor of a Massachusetts corporation, mailing four letters into Massachusetts, and receiving at least one telephone call from Massachusetts satisfied "transacting any business" test). Taking all of these facts together, Kaizen has sufficient contacts to satisfy the "transacting any business" test.

  2.     F1's Injury "Arises From" Kaizen's Contacts With Massachusetts.

Under the Massachusetts long-arm statute, "the 'arising from' language is to be generously construed in favor of asserting personal jurisdiction." *JMTR Enters.*, 42 F. Supp. 2d at 96. The Massachusetts Supreme Judicial Court has adopted a "but for" causation test for the "arising from" prong of the analysis under the long-arm statute. Under this test, "a claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." *Tatro*, 416 Mass. at 771. The Court has rejected a more restrictive "proximate cause" test. *Id.* at 771; *see Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 713 (1st Cir. 1996), *cert. denied*, 520 U.S. 1155 (1997)

("*Tatro* is controlling insofar as it deals with the construction of the Massachusetts long-arm statute . . . .").

This action clearly satisfies the "but for" test. F1 Air's claim is based on a Note freely given by Kaizen and delivered to Massachusetts in order to memorialize the payment terms for goods and services supplied by F1 Air.

C.    Exercise of Jurisdiction Over Kaizen Is Consistent With The Due
      Process Clause.

In determining whether the exercise of personal jurisdiction over an out-of-state defendant is constitutional, courts in this circuit employ a three-part test.

> First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction.

*Phillips Exeter Academy*, 196 F.3d at 288. Kaizen's contacts are sufficient to satisfy this test.

The "relatedness" prong of the constitutional analysis borrows from traditional tort notions of causation. While the First Circuit employs a more restrictive "proximate cause" standard in most circumstances, it has emphasized that proximate cause analysis will be loosened in instances where a "resident is harmed while engaged in activities integral to the relationship the corporation sought to establish...." *Nowak*, 94 F.3d at 715-716.

The "relatedness" prong of the jurisdictional tripartite test is not rigid: it is, "relatively speaking...a 'flexible, relaxed standard.'" *Sawtelle*, 70 F.3d at 1389 (citation omitted). To meet the relatedness requirement, the claim underlying the litigation must arise out of or relate to the defendant's activities in the forum state. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 61 (1st Cir.), *cert. denied sub nom, Scruggs v. Daynard*, 537 U.S. 1029

(2002). Here, the violation of the terms of the Note arose because of the dealing between the

parties. The terms of the Note were negotiated at least in part through communications in and

from Massachusetts. F1 Air's lawsuit is based on the claim that Kaizan owes it money because it

breached the terms of a Note governed by Massachusetts law. Simply put, Kaizen's contacts

with Massachusetts relate to F1 Air's claim.

> The second prong of the constitutional analysis is purposeful availment.

>> The purposeful availment requirement ensures that jurisdiction is not premised on
>> 'random, isolated, or fortuitous' contacts with the forum state, but rather
>> guarantees that the exercise of jurisdiction is 'fair, just, or reasonable.' Our two
>> focal points are voluntariness and foreseeability. The defendant's contacts with
>> the forum state must be voluntary -- that is, not based on the unilateral actions of
>> another party or a third person. In addition, the defendant's contacts with the
>> forum state must be such that he should reasonably anticipate being haled into
>> court there.

*Nowak*, 94 F.3d at 716 (citations omitted). Kaizen has sufficient voluntary contacts with

Massachusetts to reasonably anticipate being brought into court here. Kaizen was in no way

mandated to borrow money from F1 Air to pay its bills. *Daynard,* 290 F.3d at 62 ("Even in

cases where the defendant was not physically present in the forum, where the defendant initiated

the transaction by mailing or calling the plaintiff in the forum and when the defendant

contemplated that the plaintiff would render services in the forum…many courts have found

jurisdiction."). Kaizen was (and is) out of cash, and having borrowed money from a

Massachusetts-based company, it should expect to be sued here when it goes broke.

> The final prong of the First Circuit's test for personal jurisdiction requires that the Court

assess the "fairness of subjecting a nonresident to a foreign tribunal." *Nowak*, 94 F.3d at 717.

This involves an examination of five "Gestalt" factors: (1) the defendant's burden of appearing,

(2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining

convenient and effective relief, (4) the judicial system's interest in obtaining the most effective

resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *Id.*

As to the first Gestalt factor - burden on the defendant of appearing - "[i]t is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction. Thus for this particular gestalt factor to have any significance, the defendant must demonstrate that 'exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.'" *Nowak*, 94 F.3d at 718 (citations omitted). Kaizen has not made any showing of special or unusual circumstances. Kaizen merely argues that defending a case in Massachusetts with its large Massachusetts law firm "would be burdensome to Kaizen." Memorandum in Support of Motion to Dismiss at 16. This is no different then any other litigant.

As to the second Gestalt factor - the forum state's interest in adjudicating the dispute - "[t]he purpose of the inquiry is not to compare the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum has an interest." *Foster-Miller v. Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir. 1995) (emphasis omitted). Massachusetts "has an interest in providing its citizens with a convenient forum in which to assert their claims." *Nowak*, 94 F.3d at 718. Given Massachusetts' interest in interpreting its own laws (which govern the Note) and providing a forum for companies based here, this Gestalt factor favors jurisdiction.

The third Gestalt factor - the plaintiff's interest in obtaining convenient and effective relief - also weighs heavily in favor of jurisdiction. "This Court has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." *Sawtelle*, 70 F.3d at 1395. It is more convenient for F1 Air to litigate in its home state, or it would not have filed here.

The fourth Gestalt factor - the judicial system's interest in obtaining the most effective resolution of the controversy - does not favor any other forum over Massachusetts. *Nowak*, 94 F.3d at 718. Since F1 Air's cause of action is governed by Massachusetts law, this court is in the best position to quickly and effectively resolve this controversy, likely on summary judgment. Therefore, this factor weighs in favor of exercising jurisdiction.

Finally, the fifth Gestalt factor - pertinent social policies - favors the adjudication of the case in Massachusetts. "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). Having borrowed money from F1 Air to purchase necessary equipment for its plane, knowing full well that it could and would never repay it, Kaizen should have readily assumed that a Massachusetts court would be available for the collection effort. F1 Air should not be required to start over, to chase Kaizen in Florida, especially given that the entire Kaizen empire apparently operates out of Mr. Shafer's home, and its assets are already too insubstantial to make any of the additional payments due under the Note.

D.    At a Minimum, This Court Should Permit Discovery On The Issue of Personal Jurisdiction.

If the Court finds that Kaizen's contacts with Massachusetts may be insufficient on the current record, it should permit F1 Air to conduct discovery on the issue of Kaizen's other contacts with Massachusetts. For example, it is unclear at this point whether the plane makes frequent trips into Massachusetts, flights made possible, of course, by the APU paid for by F1 Air, in good faith and based on the promise of Kaizen to meet its obligations under the Note. The Court should at a minimum permit F1 Air to take targeted discovery on the issue of personal jurisdiction. *Foster-Miller, Inc.*, 46 F.3d at 143 (allowing parties to conduct discovery restricted

17

to jurisdiction before a hearing on a motion to dismiss for lack of personal jurisdiction); *Good Hope Indus., Inc.*, 378 Mass. at 2 (same).

## CONCLUSION

For all of the foregoing reasons, Kaizen's Motion to Dismiss should be denied and the case should proceed to judgment.

Respectfully submitted,

F1 AIR, LLC

By its attorney,

_____/s/_____
David Lee Evans (BBO No. 156695)

HANIFY & KING
Professional Corporation
One Beacon Street
21st Floor
Boston, Massachusetts 02108
(617) 423-0400

## CERTIFICATE OF SERVICE

I, Sara E. Hirshon, hereby certify that I have this 30th day of December, 2005 served a copy of the foregoing Plaintiff F1 Air, LLC's Opposition To Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction by serving a copy of same, electronically upon:

Ralph T. Lepore, III
Elizabeth M. Mitchell
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

Sara E. Hirshon

DATED: December 30, 2005

443172

# EXHIBIT A

# CITIZENS BANK

One Citizens Drive
Riverside, RI 02915

F1 AIR LLC
135 WOOD RD
BRAINTREE MA 02184

TO: F1 AIR LLC

Your CITIZENS BANK Account Number 1133938040 has been debited on 2005-02-25 for an
outgoing wire transfer as follows.

Amount: $159,210.41
MTS TRN: 20050225-003464

CDT: A/111000025                          1ST IBK: /
   BANK OF AMERICA, N.A., TX
   DALLAS, TX


SEND: B/RMS                               INTR BNK: /
   CITIZENS BANK RMS
   ONE CITIZENS DRIVE


ORDER BNK: /                              BNF BNK: /


ORIG: /                       BNF: /1291301028
                              AVATION MANAGEMENT GROUP
                              7515 LEMON DR PO BOX 7147
                              DALLAS TX 75209


Additional information (if applicable)
ORIG TO BNF INFO: REF KAIZEN AVATION/FED IMAD: 0225A1B7221C000687/POSTING TIME:
2005-02-25 12:14:05.54


Thank you for your business. For inquiries regarding Domestic payments call
1-877-471-1961 (Press 4) and for inquiries regarding International payments
call 1-877-471-1961 (Press 5).


✡RBS

**INVOICE**

**F1 Air**
**7515 Lemmon Avenue**
**Dallas, TX 75209**

PHONE NUMBER: 214-902-8181
FAX NUMBER: 214-902-4866

SOLD TO:
Kaizen Aviation

| | | |
|---|---|---|
| AIRCRAFT: | N463LM | |
| DATE: | March, 2005 | |

| ITEM # | DESCRIPTION | LABOR | | Flat Rate | Parts | Disc. % | Your Cost |
|---|---|---|---|---|---|---|---|
| | | HRS. | Amount | | | | |
| 10 | **Life Raft ELT** | | | | | | |
| | *Action: Unpacked life raft to gain access to ELT, reset ELT. Discharge life raft cylinder for shipment to vendor. Vendor re-charged and recertified cylinder. Repacked life raft, shipped to F1 Air Dallas, TX facility* | | | | | | |
| | Outside vendor charge - discharge and ship | | | $    141.45 | | | $    141.45 |
| | Outside vendor charge - repack and recertify | | | $    437.32 | | | $    437.32 |
| 11 | APU running high EGT at no load. | | | | | | |
| | *Action: Troubleshot APU and boroscope inspection.* | | | | | | |
| | Outside vendor charge | | | $  2,925.22 | | | $  2,925.22 |
| 12 | Dallas Airmotive Exchange/R&R APU. | | | $ 126,500.00 | | | $ 126,500.00 |
| 13 | APU rental (171 days @ $191.29 per day). | | | $ 32,710.59 | | | $ 32,710.59 |
| | **TOTALS:** | 8.0 | $  606.50 | $ 176,867.88 | $    33.75 | | $ 177,508.13 |
| | | | | | Sales Tax | 8.25% | |
| | | | | | PAY THIS AMOUNT: | | $177,508.13 |

PAGE 2

# EXHIBIT B

Westlaw.

Not Reported in N.E.2d                                                                Page 1
Not Reported in N.E.2d, 8 Mass.L.Rptr. 658, 1998 WL 408976 (Mass.Super.)
**(Cite as: 1998 WL 408976 (Mass.Super.))**

**H**

Superior Court of Massachusetts.
BETTER BOATING ASSOCIATION, INC. James
W. Sewall Company and BSB Electronic
Charts LLP
v.
BMG CHART PRODUCTS, INC., John Does 1-10,
d/b/a Blue Marble Geographics, Inc.,
Eva M. Cole, Jeffrey B. Cole, Pinpoint Systems
International, L.L.C. and Blue
Marble Group, Inc.
**No. CIV. A. 97-3738-E.**

July 10, 1998.

*MEMORANDUM OF DECISION AND ORDER ON
DEFENDANTS EVA COLE, JEFFREY COLE AND
BLUE
MARBLE GROUP, INC.'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION*

LAURIAT.

**\*1** This action arises out of a partnership agreement.
Defendants, Jeffrey Cole, Eva Cole, and Blue
Marble Group, Inc. ("BMG II") (collectively, the
"defendants"), have moved to dismiss this action
pursuant to Mass. R. Civ. P. 12(b)(2) for lack of
personal jurisdiction. [FN1] The Defendants contend
that they had no significant contacts with the
Commonwealth of Massachusetts, and that exercising
personal jurisdiction over them would be inconsistent
with due process. Plaintiffs, Better Boating
Association, Inc. ("BBA"), James W. Sewall
Company ("Sewall"), and BSB Electronic Charts
LLP ("BSB") (collectively, the "plaintiffs"), oppose
defendants' motion. For the following reasons, the
defendants' motion to dismiss for lack of personal
jurisdiction is denied.

> FN1. Defendants BMG Chart Products, Inc.,
> and Blue Marble Geographics, Inc., have not
> filed motions to dismiss for lack of personal
> jurisdiction under Mass. R. Civ. P. 12(b)(2).
> However, it is apparent that those entities
> are the same as the moving defendants (Eva
> M. Cole, Jeffrey B. Cole, and Blue Marble
> Group, Inc.) for purposes of personal
> jurisdiction; therefore, this order relates to
> all defendants with the exception of Pinpoint
> Systems International, L.L.C., and John

Does 1-10.

*BACKGROUND*

The following facts, relevant to the jurisdictionall
issue before the court, are taken from the parties'
affidavits and depositions and viewed in the light
most favorable to the plaintiffs. BBA is a
Massachusetts corporation with a principal place of
business in Rockland, Massachusetts. James M.
Owen is the president of BBA. Sewall is a Maine
corporation with a principal place of business in Old
Town, Maine. BMG II is a Maine corporation with a
principal place of business in Gardiner, Maine. It is
the corporate successor to Blue Marble Geographics,
Inc. ("BMG I"), also of Gardiner, Maine. Jeffrey Cole
was an officer, shareholder, and director of BMG I.
The Coles are officers and directors of BMG II.

On August 24, 1994, BBA, Sewall, and BMG I
entered into a partnership agreement ("the
Agreement") to create BSB. BSB was formed to
manufacture and distribute a computerized database
of nautical charts. BSB's bookkeeping, marketing,
order fulfillment, production, and storage facilities
were all located in Rockland, Massachusetts. The
Agreement provided that BSB's principal office
would be Rockland, Massachusetts. Under the
Agreement, disputes between the partners would be
governed by Massachusetts substantive law. The
Agreement also prohibited the transfer of any
partnership interest except to other partners (BBA,
Sewall or BMG I) so long as the transfer was agreed
upon by all partners.

On May 10, 1995, BMG I signed a letter of intent to
sell its partnership interest in BSB to RJC
Development Company, t/a Pinpoint Systems
International ("Pinpoint"), a Washington, D.C.
corporation. On May 22, 1995, Jeffrey Cole advised
BBA of BMG I's intent to sell its partnership interest
subject to the approval of BBA and Sewall.

BBA and Sewall met with Pinpoint and determined
that they would not approve the proposed sale.
Nevertheless, Jeffrey Cole telephoned BBA president
James Owen and sent at least one letter to Owen in an
unsuccessful attempt to convince BBA to approve the
proposed sale. In addition, Jeffrey Cole sent a letter
to BBA's counsel attempting, unsuccessfully, to sway
BBA.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                    Page 2
Not Reported in N.E.2d, 8 Mass.L.Rptr. 658, 1998 WL 408976 (Mass.Super.)
(Cite as: 1998 WL 408976 (Mass.Super.))

Despite of BBA's and Sewall's disapproval, BMG I attempted to alienate its BSB partnership interest. Plaintiffs allege that BMG I engaged in a series of transactions to sell BMG I's partnership interest to Pinpoint. Plaintiffs claim that on June 5, 1995, BMG I's sole shareholder, Eva Cole voted to change BMG I's name to BMG Chart Products, Inc. ("BMG Chart"), authorized BMG Chart's officers to sell or transfer BMG Chart's assets and authorized the transfer of the name "Blue Marble Geographics" at BMG Chart's Board of Directors discretion. Subsequently, all of BMG I's other assets were conveyed to BMG II, a new corporation, owned and controlled by the Coles. BMG II retained BMG I's expertise and proprietary information relating to the development of geographic software components. At this point, it appears that BMG Chart's only asset was its partnership rights in BSB.

**\*2** On or about August 16, 1995, the Coles and Pinpoint entered into a stock purchase agreement whereby Eva Cole, agreed to sell all of the stock of BMG Chart to Pinpoint. Pinpoint then became the successor-in-interest to BMG Chart's rights under the letter of intent with BMG II for the sale of BSB's partnership interest.

The BMG Chart-Pinpoint stock purchase agreement signed by Eva Cole recites that BSB is a "Massachusetts General Partnership." Under the stock purchase agreement, the sole asset of BMG Chart is BMG I's partnership interest in BSB. BMG II has also filed with the state of Maine to retain the use of the name "Blue Marble Geographics".

In October 1995, BBA and Sewall learned of the transfer of BMG I's partnership interest in BSB to Pinpoint through BMG Chart. BBA's Massachusetts counsel received a letter from Eva Cole on November 8, 1995, regarding the transfer of the partnership interest. Thereafter, plaintiffs filed this lawsuit alleging breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, intentional interference with contractual relations, and violations of G.L. c. 93A, § 11.

### DISCUSSION

A plaintiff confronted with a motion under Mass. R. Civ. P. 12(b)(2) bears the burden of "establishing the facts upon which the question of personal jurisdiction over the defendant is to be determined." *Droukas v. Divers Training Academy, Inc.,* 375 Mass. 149, 151, 376 N.E.2d 548 (1978). Here, defendants' actions were not G. continuous and systematic, thus barring

an exercise of general jurisdiction. See *Foster Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir.1995). In the absence of general jurisdiction, the court's inquiry in this case must focus on whether there is sufficient personal jurisdiction based on the nature and extent of defendants' contacts with Massachusetts.

A determination of personal jurisdiction requires a two-part analysis. First, the court must determine whether personal jurisdiction is authorized by the Massachusetts long arm statute, G.L. c. 223A, § 3(a)-(h). *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 767, 625 N.E.2d 549 (1994). In so doing, the court must identify and analyze a non-resident defendant's specific contacts with the forum state. *Id.* Here, plaintiffs rely on § § 3(a), (c), and (d) of the long arm statute (G.L. c. 223A).

In the second part of the personal jurisdiction analysis, the court must consider whether the exercise of personal jurisdiction is consistent with the Constitution's Due Process Clause. *Tatro,* 416 Mass. at 767, 625 N.E.2d 549; see also *Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 5-6, 389 N.E.2d 76 (1979); *Packard v. Packard,* 34 Mass.App.Ct. 543, 548, 613 N.E.2d 923 (1993). In this case, plaintiffs allege that an assertion of personal jurisdiction over the defendants would comport with due process.

### I. Long-Arm Statute
A. G.L. c. 223A, § 3(a): Transacting Business
**\*3** The long-arm statute allows a court to exercise personal jurisdiction over a non-resident defendant if plaintiff's cause of action *arose* from defendant's *business transactions* in Massachusetts. G.L. c. 223A, § 3(a). "Transacting business," within the meaning of G.L. c. 223A, § 3(a), is broadly construed to include activity which is personal, private, or commercial. *Johnson v. Witkowski,* 30 Mass.App.Ct. 697, 713, 573 N.E.2d 513 (1991). "[G]enerally the purposeful and successful solicitation of business from the resident of the Commonwealth by defendants or its agent will suffice...." *Tatro,* 416 Mass. at 767, 625 N.E.2d 549.

Here, plaintiffs allege that defendants' participation in a Massachusetts-registered partnership satisfies G.L. c. 223A, § 3(a). BSB is a registered Massachusetts general partnership based in Rockland, Massachusetts, formed to produce, market, and sell computerized navigation charts from its Massachusetts headquarters. It is unclear from the record whether BSB actually produced, marketed, or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 8 Mass.L.Rptr. 658, 1998 WL 408976 (Mass.Super.)
(Cite as: 1998 WL 408976 (Mass.Super.))

Page 3

sold any products during the time the partnership operated.

Defendants do not dispute that BSB was formed pursuant to Massachusetts law, but they argue that they were not present in Massachusetts when the partnership was formed and did not transact business, either before or after the partnership's formation, within Massachusetts. In an analogous case, however, a corporation incorporated under Massachusetts law and operating in Massachusetts was considered "transacting business" within the meaning of G.L. c. 223A, § 3(a). *Tucker Anthony Management Corp. v. Holden*, 716 F.Supp. 716 (D.Puerto Rico 1989).

Here, BSB is a registered partnership under Massachusetts law. BMG I is one of the three partners that formed BSB. The partners agreed to transact business from the partnership headquarters in Rockland, Massachusetts. The affidavits also indicate that the BSB partnership was operating as a business at the time the defendants attempted to alienate their partnership interest. These facts strongly suggest that defendants transacted business in Massachusetts within the meaning of G.L. c. 223A, § 3(a).

In other cases, "[w]here the non-resident defendants' contacts with Massachusetts had substantial commercial consequence in this state, personal jurisdiction was found, notwithstanding the absence of actual physical presence in Massachusetts." *Carlson Corp. v. University of Vermont*, 380 Mass. 102, 107, 402 N.E.2d 483 (1980). BMG I actively and deliberately participated in the partnership, therefore BMG I's conduct was more than a random or isolated contact. See *Tatro*, 416 Mass. at 767, 625 N.E.2d 549.

The existence of a Massachusetts partnership is a salient fact, but there are other facts which also support an exercise of personal jurisdiction over the defendants here. The BSB partnership agreement included a choice of law provision that any disputes between partners would be governed by Massachusetts partnership law. Choice of law provisions provide another basis for asserting personal jurisdiction over non-resident defendants, and show that a contract has a substantial connection to the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 482, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). *See also, Johnson*, 30 Mass.App.Ct. at 713-715, 573 N.E.2d 513, (a non-resident defendant's signing in Massachusetts of a document pertaining to the administration of a Massachusetts trust had transacted business within the meaning of G.L. c.

223A, § (3)(a)). Although the partnership agreement at issue here was not signed by defendants in Massachusetts, it relates directly to a Massachusetts general partnership. The agreement purporting to convey BMG Chart's stock to Pinpoint reiterated that BSB was a Massachusetts general partnership. Accordingly, the court concludes defendants deliberately associated themselves with plaintiffs for commercial gain and thus transacted business within the Commonwealth.

*4 Whether this cause of action *arose* from defendants' conduct in Massachusetts presents another question. Although defendants signed the partnership agreement in Maine, the partnership was headquartered in Massachusetts and performed business activities here. Under Massachusetts partnership law, a partner is an agent of the partnership and may be liable for the debts and obligations of another partner. See G.L. c. 108A, § § 9, 15. Thus, the partnership agreement imposed a fiduciary duty upon the defendants, and the defendants were aware that they could be subject to suit in Massachusetts were they to breach the partnership agreement. See, e.g., *Phillips v. State of Rhode Island*, 1995 WL 389919 (Mass.Super.1995) (state of Rhode Island subject to personal jurisdiction in Massachusetts after contracting with Massachusetts plaintiffs to form Massachusetts partnership).

When it became apparent to the defendants that BBA and Sewall would not accept Pinpoint as a partner, the defendants made deliberate efforts to convince BBA to accept Pinpoint as a partner. As part of those negotiations, Jeffrey Cole initiated and maintained telephone contact with Massachusetts-based BBA. Jeffrey Cole also sent at least one letter to BBA president James M. Owen, and another letter to BBA's counsel, both in Massachusetts, attempting to convince BBA that Pinpoint should replace BMG I as a BSB partner. Frequent oral and written contacts may provide a sufficient basis upon which personal jurisdiction may be premised. *Haddad v. Taylor*, 32 Mass.App.Ct. 332, 335, 588 N.E.2d 1375 (1992); *Phillips*, 1995 WL 389919 (telephone and written contact with other partners assisted court in decision to exercise personal jurisdiction over out-of-state partner). The court concludes that jurisdiction over defendant BMG II, as corporate successor to BMG I, is appropriate under G.L. c. 223A, § 3(a).

As to the Coles, the court concludes that they too are subject to *in personam* jurisdiction in Massachusetts because their conduct arose from the same activities.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                          Page 4
Not Reported in N.E.2d, 8 Mass.L.Rptr. 658, 1998 WL 408976 (Mass.Super.)
**(Cite as: 1998 WL 408976 (Mass.Super.))**

While the general rule is that personal jurisdiction over a corporation does not automatically confer personal jurisdiction over its officer, [FN2] a corporate officer's active participation in a corporation's in-state activities may supply a basis for personal jurisdiction. *Kleinerman v. Morse,* 26 Mass.App.Ct. 819, 824, 533 N.E.2d 221 (1989).

>    FN2. See also *My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 233 N.E.2d 748 (1968) (discussing the protection afforded by the corporate form).

Unlike the corporate form of business, however, partners may be personally liable for the debts of the partnership. G.L. c. 108A, et seq. BMG I was a small, closely held corporation with only seven employees including the Coles. The Coles, acting as officers of BMG I, actively participated in the transfer of its BSB partnership interest to Pinpoint through the creation of BMG Chart and BMG II. The Coles were also officers and directors of BMG Chart and BMG II. The Coles' entrepreneurial activities in forming a partnership suggests they intentionally sought commercial benefit in Massachusetts. The Coles' attempts to transfer the partnership interest through BMG Chart while continuing their business under BMG II also indicates that they hoped to benefit from this transaction. Since the defendants' attempted alienation of BMG I's partnership interest gave rise to the subject matter of this suit, the court may assert personal jurisdiction over the Coles. See *Maker v. Bermingham,* 32 Mass.App.Ct. 971, 972-973, 592 N.E.2d 1339 (1992) (personal jurisdiction over partner-husband permitted assertion of personal jurisdiction over partner-wife).

  B. **G.L. c. 223A, § 3(c) & (d): Tortious Conduct**
**\*5** Although plaintiffs have met their burden under G.L. c. 223A, § 3(a), they offer additional grounds for personal jurisdiction under G.L. c. 223A, § 3(c) and (d). General Laws c. 223A, § 3(c) provides that a Massachusetts court may assert personal jurisdiction over a non-resident defendant if the defendant "caus[ed] tortious injury by act or omission in this commonwealth." This section of the long-arm statue requires that defendants' tortious conduct occur in Massachusetts, rather than simply affect a Massachusetts resident. *Spring v. Geriatric Auth'y of Holyoke,* 394 Mass. 274, 292, 475 N.E.2d 727 (1985).

Plaintiffs argue that defendants intentionally interfered with their contractual relationship with BMG I in Massachusetts, where the partnership

conducted its business. Thus, they assert that defendants' conduct occurred in Massachusetts. See *Johnson,* 30 Mass.App.Ct. at 714, 573 N.E.2d 513 (non-resident defendants subject to personal jurisdiction pursuant to G.L. c. 223A, § 3(c), because they breached their fiduciary duty while working in Massachusetts).

This court disagrees. Based on the affidavits and depositions, the court concludes that defendants' allegedly tortious conduct occurred *outside* of Massachusetts. Therefore, G.L. c. 223A, § 3(c) is inapplicable. Defendants solicited Pinpoint, a Washington, D.C., company, to purchase its partnership share outside of Massachusetts. Defendants formed BMG II and BMG Chart as Maine corporations, fraudulently or not, in order to facilitate the transfer of BMG I's partnership interest. This also occurred outside of Massachusetts. The only conduct that occurred within Massachusetts was Jeffrey Cole's letters and telephone calls to BBA relating to BMG I's attempts to alienate its partnership interests. The plaintiffs' complaint, however, rests on the allegation that BMG Chart and BMG II were formed fraudulently in order to facilitate the transfer of BMG I's partnership interest. Accordingly, this court concludes that the alleged tortious conduct of defendants occurred outside of Massachusetts and G.L. c. 223A, § 3(c) does not apply.

 General Laws c. 223A, § 3(d) permits an assertion of personal jurisdiction over a non-resident defendant who has allegedly committed a tort affecting a Massachusetts resident. The court may assert its long-arm jurisdiction "[i]f the non-resident defendant caus[ed] tortious injury inside [Massachusetts] by an act or omission outside [Massachusetts] if he regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [Massachusetts];...." G.L. c. 223A, § 3(d).

 Under this statute, the plaintiff must first demonstrate that the defendants' act or omission caused a tortious injury inside Massachusetts. *Cunningham v. Adrox, Inc.,* 40 Mass.App.Ct. 279, 281, 663 N.E.2d 577 (1996). Here, plaintiffs allege that the defendants' efforts to transfer BMG I's partnership share in BSB to Pinpoint violated the partnership agreement, a contractual relationship. They allege defendants intentionally interfered with this contractual relationship. Thus, the plaintiffs' allegations of economic injury satisfies the first

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                            Page 5
Not Reported in N.E.2d, 8 Mass.L.Rptr. 658, 1998 WL 408976 (Mass.Super.)
**(Cite as: 1998 WL 408976 (Mass.Super.))**

requirement of G.L. c. 223A, § 3(d). *Keds Corp. v. Renee Inter. Trading Corp.,* 888 F.2d 215, 218 (1st Cir.1989).

*6 Next, the plaintiffs must show that the defendants either (1) conducted or solicited business in Massachusetts; (2) engaged in any other persistent course of conduct; (3) or derived substantial revenues from goods used or consumed or services rendered in Massachusetts. G.L. c. 223A, § 3(d). Here, the defendants' conduct relating to the formation of the BSB partnership and the defendants' allegedly fraudulent efforts to alienate BMG I's partnership interest, as discussed above, demonstrate that the defendants solicited business and/or engaged in a persistent course of conduct in Massachusetts.

In addition, the defendants admit that one percent of BMG II's revenues, or up to 12 product sales per year, are generated in Massachusetts. They claim, however, that this is an insignificant amount upon which to premise personal jurisdiction under the "substantial revenues" test. However, the "substantial revenues" test does not require an absolute amount. *Heins v. Wilhelm Loh Wetzlage Optical Machinery GmbH,* 26 Mass.App.Ct. 14, 522 N.E.2d 989, review denied, 402 Mass. 1109 (1988). See *Mark v. Obear & Sons, Inc.,* 313 F.Supp. 373, 376 (D.Mass.1970)(.5 percent of sales revenue satisfied the "substantial revenues" test). Accordingly, the court concludes that defendants did derive substantial revenues from BMG I's products sold in Massachusetts, thereby satisfying the jurisdictional requirements of G.L. c. 223A, § 3(d).

In addition, defendants advertised BMG I products in Massachusetts over the World Wide Web and through national trade magazines. Advertising directed toward Massachusetts, when combined with other facts, may provide additional evidence that defendant deliberately benefitted from their in-state activities. Although this by itself would be insufficient for an assertion of personal jurisdiction, when considered with other factors, it may assist a court in its personal jurisdiction analysis. See, e.g., *Gunner v. Elmwood Dodge, Inc.,* 24 Mass.App.Ct. 96, 98-100, 506 N.E.2d 175 (1987). Here, the advertising provides additional support the court's exercise of personal jurisdiction over the defendants.

In sum, the plaintiffs have established that the defendants have significant contacts with Massachusetts under G.L. c. 223A, § 3(a) and (d). These contacts provide a sufficient basis for the court's assertion of personal jurisdiction under the

first prong of the personal jurisdiction analysis.

II. Due Process

The court's next inquiry is whether maintaining personal jurisdiction over the defendants "offend[s] 'traditional notions of fair play and substantial justice,' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1940), quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Among the factors the court must consider are (1) the burden of defending in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interest of all sovereigns in promoting substantive social policies. *Id.*

*7 Here, requiring the defendants to defend this action in Massachusetts comports with due process. The defendants deliberately formed a Massachusetts partnership (with another Massachusetts corporation) that was to be governed by the substantive law of Massachusetts. Under Massachusetts law, partners owe a fiduciary duty to each other and may be liable to other partners. See G.L. c. 108A, §§ 9, 15. [FN3] Thus, it was foreseeable that the defendants could be subject to a lawsuit in Massachusetts. In addition, BBA is a Massachusetts corporation and BSB is a Massachusetts partnership; therefore Massachusetts has a strong interest in retaining jurisdiction over this action. See *Carlson Corp.,* 380 Mass. at 108, 402 N.E.2d 483. Because the Agreement is to be governed by Massachusetts substantive law, Massachusetts would be the forum best able to apply the law specified in the Agreement. Finally, compelling the defendants to defend this action in Massachusetts would not be too onerous. Travel between Maine and Massachusetts, two New England states, would present little difficulty for the defendants. See, e.g., *Faigin v. Kelly,* 919 F.Supp. 526 (D.N.H.1996) (travel between Buffalo, New York, and New Hampshire held not to be burdensome for defendant); *Phillips,* 1995 WL 389919 (travel from Rhode Island to Massachusetts not burdensome). Accordingly, compelling the defendants to defend this action in Massachusetts is not constitutionally unreasonable and is consistent with the due process requirements of *International Shoe Co.,* 326 U.S. at 310.

FN3. The same is true under the Maine Partnership Act, Maine Rev. Stat. Ann., Title 31, et seq. (West 1998).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                    Page 6
Not Reported in N.E.2d, 8 Mass.L.Rptr. 658, 1998 WL 408976 (Mass.Super.)
**(Cite as: 1998 WL 408976 (Mass.Super.))**


*ORDER*
 For the foregoing reasons, Defendants Eva Cole,
Jeffrey Cole And Blue Marble Group, Inc.'s Motion
To Dismiss For Lack Of Personal Jurisdiction is
*DENIED.*

 Not Reported in N.E.2d, 8 Mass.L.Rptr. 658, 1998
WL 408976 (Mass.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.